**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4545-12T3

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

     Plaintiff-Respondent,

v.

R.W.,

     Defendant-Appellant.

_____

IN THE MATTER OF M.W. and
Z.W., minors.

_____

<div style="border:1px solid black">

**APPROVED FOR PUBLICATION**

**December 23, 2014**

**APPELLATE DIVISION**

</div>

Submitted October 22, 2014 — Decided December 23, 2014

Before Judges Alvarez, Waugh, and Carroll.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FN-04-437-11.

Joseph E. Krakora, Public Defender, attorney for appellant (Chanima K. Odoms, Designated Counsel, on the briefs).

John J. Hoffman, Acting Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jeffrey S. Widmayer, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Linda Vele Alexander, Designated Counsel, on the brief).

The opinion of the court was delivered by

ALVAREZ, P.J.A.D.

Defendant R.W. appeals from a July 11, 2011 Family Part order entered in a Title Nine[1] proceeding finding that she abused and neglected her infant,[2] born February 2011, as defined in N.J.S.A. 9:6-8.21(c)(4)(b). We now reverse, concluding that R.W.'s use of marijuana on one occasion, while accompanied by her child, did not establish that she placed the child in imminent danger or at substantial risk of harm.

Plaintiff New Jersey Division of Child Protection and Permanency (Division) effectuated an emergent removal[3] of R.W.'s child when she was incarcerated as a parole violator on March 29, 2011. The Division's verified complaint, filed two days later, stated that R.W. and her family had a "long history with the Division." Because eighteen-year-old R.W. "was no longer welcome to reside with her adoptive parents" and had been in the care of the Division for an unspecified number of years, the

_____

[1] N.J.S.A. 9:6-8.21 to -8.73.

[2] The father's identity was unknown when the trial court entered its order.

[3] N.J.S.A. 9:6-8.28(a)(2) authorizes the Division to remove children "to avoid imminent danger to the child's life, safety[,] or health."

Division placed her and her child in the Capable Adolescent Mothers Program (CAM).

The complaint alleged:

> The Division was informed that [R.W.] had admitted to smoking marijuana on March 28, 2011[,] at CAM. The CAM staff had reportedly made several efforts to assist [R.W.] in developing life skills and parenting skills, but had been unsuccessful. It was further reported that [R.W.] had exhibited poor parenting skills, as she had been observed yelling, cursing[,] and screaming at [her infant]. [R.W.] also reportedly left [the infant] alone in the room or with staff for extended periods of time. Due to [R.W.'s] overall behavior and lack of compliance at CAM, it was determined that she had violated her parole. There were also concerns with [R.W.] being verbally aggressive towards the staff members at CAM and her refusal to comply with a psychological evaluation. Therefore, on the afternoon of March 29, 2011, her parole officer arrived at the CAM facility to remove [R.W.] and to take her to the Hayes Correctional Facility.

The record includes no information regarding R.W.'s parole, or her original offense.

R.W. failed to appear for the fact-finding hearing, during which the Division presented no witnesses and moved into evidence only two exhibits. P-1, a document described as a "Court Report," summarized the current status of services extended to R.W.

P-2, the crucial exhibit and sole basis for the judge's finding of abuse and neglect, was the "Screening Summary" prepared by a Division worker about the incident. It stated:

> Report advises that [eighteen] year old [R.W.] is a parolee and was placed in [CAM] by [the Division]. She is the mother of [a one] month old [] who is also a resident at CAM. [R.W.] has admitted to smoking marijuana while the baby was with her in the community on [March 28, 2011].
>
> CAM staff have made several efforts to assist [R.W.] in developing life skills and parenting skills to no avail. [R.W.] has exhibited poor parenting skills when dealing with her child. She has been observed yelling, cursing and screaming at her baby. [R.W.] has also left the baby alone in the room or with staff for extended periods of time.
>
> Since [R.W.]'s behavior and overall compliance with CAM is an important aspect in the conditions of her parole, she has [] violated [her parole]. On [March 29, 2011,] at approximately 1:00[ p.m.], her parole officer arrived at the facility to remove [R.W.] from CAM. [R.W.] is currently detained and [the child] remains at CAM awaiting [Division] placement.

During the fact-finding, the Division's attorney advised the court that it could not prove that R.W. left the child "in her room alone" or otherwise engaged in inappropriate behavior toward her baby or toward CAM staff. Instead, the agency would rely exclusively on the statements in the Screening Summary,

"that she was using substances while caring for the child."  The Law Guardian did not object.

When asked if she objected to a "Title [Nine] finding" based on the documents, R.W.'s attorney merely explained that her client had been a minor in earlier protection cases, but was now an adult with "her own child" and "using" drugs.  Counsel added that she did not know why her client was absent and that "she's somewhat complying with some services."  She did not object to the Screening Summary's admission.

The trial judge then rendered his decision from the bench:

> All right.  [The] [c]ourt certainly appreciates those issues, but the [c]ourt does find that mom, here the defendant, failed to properly care for her child by using illegal substances, causing her to lack the capability or the capacity to properly maintain this child.  The use of the substances, and the [c]ourt finds cause the inadequate supervision, but I understand the inadequate supervision was not proven by leaving the child alone, but because of the use of the — being under the influence of a controlled dangerous substance, that caused her to be in a position of not properly caring for the child.
>
> So the finding is clearly by the substantial weight of the evidence.  And [] the [c]ourt sustains . . . the Division's position at this time.

After the fact-finding hearing, the litigation continued. R.W. had a second child, and the matter was dismissed on April 19, 2013.  Although not relevant to the issues addressed in this

decision, it is undisputed that both children were later placed with a family member.

Documents prepared by Division staff are admissible pursuant to Rule 5:12-4(d), "provided [they] satisfy the requirements of the business records exception [to the hearsay rule], N.J.R.E. 803(c)(6) and 801(d)." N.J. Div. of Youth & Family Servs. v. M.G., 427 N.J. Super. 154, 173 (App. Div. 2012). But Rule 5:12-4(d) by its very terms requires the Division to meet the foundational requirements for admission of "Records of Regularly Conducted Activity," N.J.R.E. 803(c)(6).

The business record exception includes:

> [a] statement contained in a writing or other record . . . made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business . . . unless the sources of information . . . indicate that it is not trustworthy.
>
> [N.J.R.E. 803(c)(6).]

That the Screening summary contained at least three out-of-court statements — R.W.'s alleged admission to a CAM worker who allegedly repeated it to the Division worker who wrote the report — is not in and of itself the problem. See N.J.R.E. 805; Konop v. Rosen, 425 N.J. Super. 391, 402 (App. Div. 2012) (each hearsay-within-hearsay statement may be

admitted so long as the basis for admission is separately considered as to each). Turning to the most-remote statement first, R.W.'s admission that she was using drugs is "trustworthy" because it was against her penal interest, exposing her to "criminal liability" as a result of potential parole violation consequences. N.J.R.E. 803(c)(25).

The evidentiary problem arises from the CAM worker's narrative to the Division worker. That statement could not be assessed for trustworthiness. See N.J.R.E. 803(c)(6). We cannot even discern from the narrative whether the CAM worker who repeated R.W.'s statement to the Division was the same person who originally heard it. In other words, absent any foundation, the judge should have ruled this portion of the Screening Summary inadmissible, recognizing his inability to assess its trustworthiness. See N.J.R.E. 803(c)(6); M.G., supra, 427 N.J. Super. at 174.

R.W.'s attorney, however, appeared to accede to the documents' admission. Thus the Division was deprived "of the opportunity to overcome any objection," and the trial court was deprived "of the necessity to make a ruling based on the arguments presented by both sides." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 341 (2010). In New Jersey Division of Youth & Family Services v. M.D., we reiterated the

importance of a defendant's understanding the meaning of, and consequences flowing from, stipulations to abuse and neglect. 417 N.J. Super. 583, 609-16 (App. Div. 2011). In such cases, a defendant is "waiving her right to a hearing at which [the Division] must prove abuse and neglect by a preponderance of the evidence[.]" Id. at 617-18.

We take this opportunity to caution trial judges in contested cases who render fact-findings based solely on documentary submissions, particularly in the affected parent's absence. Unquestionably, Rule 5:12-4(d) makes Division documents admissible when they contain "reports by staff personnel or professional consultants." But trial judges must nonetheless fully assess the evidential issues inherent in the Division's submission of documents which include statements by others than Division workers or experts. In any event, had every requirement of the Rules of Evidence been met, R.W.'s conduct was nonetheless insufficient for a finding of abuse or neglect.

The Division relied exclusively on the Screening Summary's statement that R.W. "admitted to smoking marijuana while the baby was with her in the community on [March 28, 2011]." The summary also discussed R.W. exhibiting "poor parenting skills," though the Division did not introduce any proof of such conduct. The Division's attorney acknowledged it could not demonstrate

any other relevant behavior and proceeded solely on the basis of R.W.'s admission that she used marijuana on March 28.

Our Supreme Court explained in New Jersey Division of Youth & Family Services v. A.L. that: "'Abuse' and 'neglect' are carefully defined in the law. N.J.S.A. 9:6-8.21(c). . . . If there is no evidence of actual harm, [] the statute requires a showing of 'imminent danger' or a 'substantial risk of harm' before a parent or guardian can be found to have abused or neglected a child." 213 N.J. 1, 8 (2013). In A.L., a pregnant mother tested positive for cocaine during delivery. Id. at 9. The baby was born hours later, and his meconium "revealed the presence of 'cocaine metabolites.'" Ibid. Nonetheless, the child was born healthy.

At the fact-finding hearing in A.L., the Division proceeded in much the same manner as in this case, solely by moving records into evidence. The trial judge found, based on A.L.'s cocaine ingestion shortly before the birth of her baby, that she had abused and neglected her child. The Court reversed, concluding, among other things, that the Division had not presented evidence explaining the meaning of the hospital test regarding the mother's cocaine ingestion.

The Court warned judges not to "fill in missing information on their own or take judicial notice of harm." Id. at 28. The

A-4545-12T3

Court reminded judges that the "fact-sensitive nature of abuse and neglect cases turns on particularized evidence." <u>Ibid.</u> (citation omitted). Missing in <u>A.L.</u> was any explanation of the effect the presence of metabolites would have on the child. Missing in this case was any explanation of the potential for harm to the child from R.W.'s marijuana use.

In her brief, R.W. also refers us to <u>New Jersey Division of Youth & Family Services v. V.T.</u>, 423 <u>N.J. Super.</u> 320 (App. Div. 2011). In that case, the trial court found that a father who had ingested cocaine and marijuana before exercising his Division-supervised visitation with his eleven-year-old daughter had abused and neglected her by virtue of that conduct. <u>Id.</u> at 323. We noted on appeal that the absence of expert testimony interpreting his drug screen test results (obtained by the Division at the time of the visits) precluded any precise determination as to the extent that his drug use posed a risk of harm to his child. <u>Id.</u> at 331. In fact, the Division worker testified that V.T. behaved appropriately at both visits and did not seem impaired. <u>Ibid.</u>

In <u>V.T.</u>, we reiterated the societal concern that no child come under the care of an intoxicated parent. <u>Ibid.</u> This concern is more pressing where, as here, the child is an infant. On the other hand, "not all instances of drug ingestion by a

parent will serve to substantiate a finding of abuse or neglect." Id. at 332. Instead of filling in missing information, an understandable response by judges who regularly witness the evils inflicted on children by their parents' drug use, judges must engage in a fact-sensitive analysis turning on "particularized evidence." A.L., supra, 213 N.J. at 28.

A.L. and V.T. were both issued after the decision in this case. Prior to those decisions, however, N.J.S.A. 9:6-8.46(b) obliged judges to decide abuse and neglect matters solely on "competent, material[,] and relevant evidence." These proceedings are important not only to the children involved, but also to the parents, and to society as a whole.[4]

R.W.'s single admission was insufficient to meet the Division's burden of proof. The circumstances of her ingestion were not detailed, other than that she was "in the community." Hence it cannot even be assumed that the baby was solely in her mother's care when she was intoxicated, and that no one was

---

[4] A fact-finding hearing's "significant consequences" include: (1) the potential for a "dispositional order . . . plac[ing] the child in the custody of a relative or another suitable person for a substantial period of time[;]" (2) the potential for a future "Division . . . action to terminate parental rights[;]" and (3) the Division's recordation of the alleged abuser's name "into a Central Registry" whose confidential records "may be disclosed, on written request, to doctors, courts, child welfare agencies, employers [], and others[.]" A.L., supra, 213 N.J. at 25-26.

available to attend to the child's needs. Furthermore, the trial court knew nothing about the magnitude, duration, or impact of R.W.'s intoxication.

A judge's legal conclusions are reviewed de novo: when they are unsupported by competent evidence in the record, they will be reversed. Cesare v. Cesare, 154 N.J. 394, 412 (1998); Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). In this case, the legal conclusion that R.W. placed her child in imminent danger or at substantial risk of harm was unwarranted, as it had inadequate evidentiary support.

Courts need not wait until harm occurs before interceding to protect children. In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999); accord N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 616 n.14 (1986). But this is not, for example, an instance of a parent intentionally leaving an infant unattended in a home or a car, which is generally treated as prima facie abuse and neglect because such conduct risks tragic consequences. See N.J. Div. of Youth & Family Servs. v. M.W., 398 N.J. Super. 266, 272 (App. Div.) (upholding termination of parental rights where defendant had left two young boys alone in a locked basement), certif. denied, 196 N.J. 347 (2008); State v. M.L., 253 N.J. Super. 13, 30-31 (App. Div. 1991) (upholding a child-endangerment conviction where defendant had left her fifteen-

month-old unattended in her apartment for several hours), certif. denied, 127 N.J. 560 (1992). Here, the trial judge "filled in missing information" and took "judicial notice of harm." A.L., supra, 213 N.J. at 28.

Finally, the Law Guardian contends on appeal that R.W., by consuming drugs while on parole, made her child an abused or neglected child because of the risk she would be incarcerated and thus unavailable. Parolees understand that they must abstain from drug use or else risk incarceration. See N.J.A.C. 10A:71-6.4(a)(10), -7.1, and -7.9. If the Law Guardian's argument had merit, however, then the mere act of committing a crime, violating parole, or violating probation, with nothing more, would constitute an act of abuse or neglect. The Legislature could not have intended that result when it enacted the abuse and neglect statute.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION