RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1084-15T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

 Plaintiff-Respondent,

v.

T.S.,

 Defendant-Appellant,

and

A.J. and F.R.,

 Defendants.
_________________________________

IN THE MATTER OF F.R., A.S.,
Ks.J. and Ka.J.,

 Minors.
_________________________________

 Argued April 26, 2017 – Decided June 6, 2017

 Before Judges Alvarez and Manahan.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Essex County,
 Docket No. FN-07-399-14.

 Thomas W. MacLeod, Designated Counsel, argued
 the cause for appellant (Joseph E. Krakora,
 Public Defender, attorney; Mr. MacLeod, on the
 briefs).

 Michael Antenucci, Deputy Attorney General,
 argued the cause for respondent (Christopher
 S. Porrino, Attorney General, attorney; Andrea
 M. Silkowitz, Assistant Attorney General, of
 counsel; Mr. Antenucci, on the brief).

 Margo E.K. Hirsch, Designated Counsel, argued
 the cause for minors (Joseph E. Krakora,
 Public Defender, Law Guardian, attorney; Ms.
 Hirsch, on the brief).

PER CURIAM

 Defendant T.S. appeals from a May 15, 2014 Family Part order

finding of abuse and neglect after the Division of Child Protection

and Permanency (Division) conducted an investigation into

defendant's marijuana abuse and its impact on her children.

Defendant argues the Division failed to establish that her drug

use created a substantial risk of harm. We disagree and affirm.

 We discern the following facts from the record. Defendant

is the mother of T.S. (Tessa) (born 1998), F.R., Jr. (Frank) (born

2000), A.S. (Amelia) (born 2001), and twins Ks.J. (Kyle) and Ka.J.

(Kayla) (born 2010).1 Tessa was reported to have been placed in

the legal and physical custody of her paternal grandmother as an

infant via a family arrangement.

1
 We use pseudonyms to protect the identity of the parties
involved.

 2 A-1084-15T1
 Defendant had eleven prior referrals with the Division dating

back to 2003, prior to the referral presently before us. These

previous referrals include allegations of substance abuse,

physical abuse, inadequate supervision, lack of stable housing,

and domestic violence.2

 Defendant's current Division case opened on May 8, 2013, when

she was involved with an investigation regarding a friend, T.O.

(Trudy), and her six-year-old daughter, Z.S. (Zoe). Trudy asked

defendant to watch Zoe for the afternoon. However, later that

evening, Trudy reported to the Division that Zoe had gone missing.

During the investigation, defendant admitted to keeping Zoe out

for a "prolonged period of time" before giving the child back to

her uncle. Zoe was later found by police on a porch at Trudy's

home, asleep under a bag.

 On May 17, 2013, defendant was asked about allegations of

substance abuse reported by Trudy when she contacted the Division.

Defendant admitted to daily marijuana use and occasional alcohol

consumption. As a result of the admission, the Division referred

defendant for substance abuse evaluations. Defendant completed

the evaluations and was scheduled to begin substance abuse

2
 The record is not clear regarding the outcome of the prior
referrals except for investigation summaries which state some of
the previous allegations were "unsubstantiated."

 3 A-1084-15T1
treatment on July 9, 2013, at the University of Medicine and

Dentistry of New Jersey's (UMDNJ) Behavioral Health Care Center.

A.J. (Andrew), defendant's boyfriend at the time and father of

Kyle and Kayla, completed a substance abuse evaluation on June 4,

2013, at the Essex County Substance Abuse Initiative (SAI). During

the evaluation, Andrew reported his concern that defendant

suffered from mental illness. SAI reported this allegation to the

Division.

 On June 6, 2013, the Division spoke with defendant and Andrew

to address the allegation reported by SAI. Defendant denied

suffering from mental illness. Notwithstanding defendant's

denial, the Division scheduled her for a psychological evaluation

to rule out any mental health issues.

 During the course of the investigation, the Division also

received school reports for Amelia and Frank. Amelia was reported

to have a severe learning disability, which caused her to function

below her grade level. Additionally, Amelia had a poor attendance

record during the 2012-13 school year, missing twenty-six days

overall. When Amelia was in school, she was described as being

unprepared, appearing unkempt and having a foul odor, lacking

social skills, becoming frustrated easily, and being physically

violent. The school also reported that defendant was not

responsive to its concerns for Amelia, although was aware of the

 4 A-1084-15T1
educational issues. Similarly, Frank's school reported that he

suffered from a learning disability, had issues with aggression,

and that his responses to situations were "often unwarranted."

 At the conclusion of the Division's investigation, defendant

was "established" for creating a substantial risk of harm to the

children based on her admitted "frequent drug use." The case

remained open with the Division to ensure the concerns raised were

monitored, including defendant's compliance with substance abuse

treatment and to ensure that Amelia and Frank's educational issues

were resolved.

 Defendant disclosed to the Division that, as of August 7,

2013, she had not commenced substance abuse treatment.

Subsequently, the Division made numerous visits to defendant's

home giving her treatment program information. Despite these

efforts by the Division, as of December 17, 2013, defendant still

had not started treatment.

 The Division determined that care and supervision litigation

against defendant was necessary because she was non-compliant with

recommended substance abuse treatment. On January 16, 2014, the

Division filed a Verified Complaint for Care and Supervision of

the minors Frank, Amelia, Kayla and Kyle, naming defendant and

 5 A-1084-15T1
Andrew as defendants.3 At the hearing before a Family Part judge,

the Division presented its concerns over defendant's history of

substance abuse and non-compliance with treatment. The Division

also noted concerns as to the family's frequent relocation within

different school districts, and its negative impact on the minors'

behavior and school attendance.

 The judge signed the order to show cause (OTSC), finding the

Division's care over the minors was necessary to "avoid an ongoing

risk" to their lives, safety, and health based on the sufficient

concerns presented by the Division.

 On February 19, 2014, the return date for the hearing on the

OTSC, the Division reported that defendant had not started her

substance abuse treatment and failed to obtain a doctor's note

clearing her for participation in a program. The judge ordered

defendant to obtain the doctor's note and to comply with in-home

services, including a parent aide.

 At the May 15, 2014 fact-finding hearing, the Division offered

the testimony of its investigator, Michael Hunter. Hunter

testified about the Division's involvement with defendant,

including the prior referrals and the current investigation

3
 After the Division filed the Verified Complaint for Care and
Supervision, Andrew never appeared.

 6 A-1084-15T1
prompted by the referral of Trudy regarding Zoe. Hunter also

testified about the educational issues involving Amelia and Frank.

 The Division further presented the testimony of Hasan

Sanders, the case manager, who continued working with the family

after the Division's initial investigation. Sanders testified

that during his time with the family, defendant was non-compliant

with substance abuse treatment. Specifically, defendant never

followed up with the UMDNJ program, nor did she follow up with

Sanders' list of recommended treatment programs. Each program

required defendant to obtain a doctor's note clearing her for

participation. Notwithstanding, defendant never made efforts to

secure a doctor's approval.

 At the conclusion of the testimony, the Division argued that

it met its evidential burden that defendant neglected the minors

by placing them at risk of harm, as defined by N.J.S.A. 9:6-

8.21(c). The Division specifically pointed to the marijuana abuse

and treatment non-compliance in combination with the educational

neglect of Amelia and Frank as supportive of a finding of abuse

and neglect.

 In an oral decision, the judge determined that the Division

had established by a preponderance of the evidence that defendant

neglected the children, as proscribed by N.J.S.A. 9:6-8.21(c).

The judge found that defendant had a long history with the

 7 A-1084-15T1
Division, including a prior substantiation involving substance

abuse, and that she was given ample time to remediate the

Division's substance abuse concerns. The judge further found that

defendant never complied with any recommended substance abuse

program, and that she continued to test positive for marijuana.

 The judge held that defendant's drug use "had a detrimental

effect on [the] children, and it did cause harm." The judge

further held that the educational issues of Amelia and Frank

stemmed from defendant's failure to monitor school attendance and

her failure to address behavioral issues. The judge noted that

the totality of the circumstances supported a finding that there

was a risk of harm to the children based on defendant's potential

relapse due to her continued substance abuse. An order finding

abuse and neglect was entered.

 Defendant raises the following point on appeal:

 POINT I

 THE TRIAL COURT'S FINDING OF ABUSE OR NEGLECT
 SHOULD BE REVERSED BECAUSE IT WAS NOT
 SUPPORTED BY A PREPONDERANCE OF THE COMPETENT
 EVIDENCE IN THE RECORD BELOW.

 A. The Record Does Not Contain
 Sufficient Competent Evidence That
 [Defendant's] Conduct Actually
 Harmed Her Children or Created a
 Substantial Risk of Harm, or That
 [Defendant] Otherwise Failed to
 Exercise a Minimum Degree of Care.

 8 A-1084-15T1
 B. Although the Trial Court
 Improperly Failed to Specify Which
 Element(s) of N.J.S.A. 9:6-
 8.21(c)(4) Supported Its Legal
 Finding of Abuse or Neglect, the
 Record Evidence Does Not Satisfy
 Either Potentially Relevant
 Subsection of This Statute.

 Our standard of review is well-settled. We are bound by the

trial court's factual findings if supported by sufficient credible

evidence. N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J.

Super. 551, 578 (App. Div. 2010). We accord particular deference

to the Family Court's fact-finding because of the court's "special

expertise" in family matters, Cesare v. Cesare, 154 N.J. 394, 412-

13 (1998), its "feel of the case," and its opportunity to assess

credibility based on witnesses' demeanor. N.J. Div. of Youth &

Family Servs. v. E.P., 196 N.J. 88, 104 (2008). However, we will

not hesitate to set aside a ruling that is "so wide of the mark

that a mistake must have been made." N.J. Div. of Youth & Family

Servs. v. P.W.R., 205 N.J. 17, 38 (2011) (quoting N.J. Div. of

Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). On the

other hand, we accord no deference to the trial court's

"interpretation of the law and the legal consequences that flow

from established facts." Manalapan Realty, L.P. v. Twp. Comm. of

Manalapan, 140 N.J. 366, 378 (1995).

 9 A-1084-15T1
 Whether a parent has failed to exercise a minimum degree of

care "is fact-sensitive and must be resolved on a case-by-case

basis." Dep't of Children & Families v. E.D.-O., 223 N.J. 166,

192 (2015). Courts undertaking this analysis "must avoid resort

to categorical conclusions." Id. at 180 (citing Dep't of Children

& Families v. T.B., 207 N.J. 294, 309 (2011)). The court should

base its determination on the totality of the circumstances. N.J.

Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 329

(App. Div. 2011). "[T]he elements of proof are synergistically

related. Each proven act of neglect has some effect on the

[child]. One act may be substantial or the sum of many acts may

be substantial." Id. at 329-30 (internal quotation marks and

citation omitted).

 Defendant argues that the evidence presented by the Division

was insufficient to establish that she abused or neglected her

children. Specifically, defendant contends that the trial court

did not make any specific findings with respect to what conduct

placed her children in imminent danger of becoming physically,

mentally, or emotionally impaired, or, alternatively, there was

no evidence that the children's educational issues actually caused

harm.

 N.J.S.A. 9:6-8.21(c)(4) declares a child to be abused or

neglected if the child's

 10 A-1084-15T1
 physical, mental, or emotional condition has
 been impaired or is in imminent danger of
 becoming impaired as the result of the failure
 of his parent . . . to exercise a minimum
 degree of care (a) in supplying the child with
 adequate . . . education . . . (b) in providing
 the child with proper supervision or
 guardianship, by unreasonably inflicting or
 allowing to be inflicted harm, or substantial
 risk thereof, including the infliction of
 excessive corporal punishment; or by any other
 acts of a similarly serious nature requiring
 the aid of the court. . . .

 The Division "must prove that the child is 'abused or

neglected' by a preponderance of the evidence, and only through

the admission of 'competent, material and relevant evidence.'"

P.W.R., supra, 205 N.J. at 32 (quoting N.J.S.A. 9:6-8.46(b)). The

statute requires a court to consider harm or risk of harm to the

child, as opposed to the intent of the abuser, because "[t]he main

goal of Title 9 is to protect children 'from acts or conditions

which threaten their welfare.'" G.S. v. Dep't of Human Servs.,

157 N.J. 161, 176 (1999) (quoting State v. Demarest, 252 N.J.

Super. 323, 330 (App. Div. 1991)). Further, the phrase "minimum

degree of care," as used in N.J.S.A. 9:6-8.21(c)(4)(b), means

conduct that is not "grossly or wantonly negligent." G.S., supra,

157 N.J. at 178. Therefore, to show a failure to exercise a

minimum degree of care, negligence is not sufficient, but

intentional behavior is not essential. Id. at 178-79.

 11 A-1084-15T1
 We have recognized that a parent's use of drugs while caring

for a child puts the child at risk at "the slightest parental

misstep." See V.T., supra, 423 N.J. Super. at 331. In V.T., this

court held proof of a parent's drug use by itself was not enough

to sustain a finding of abuse or neglect where a father used drugs

prior to his visits with an eleven-year-old child. Ibid. We held

that the father's use of cocaine and marijuana and failure to

complete drug treatment did not "inherently create[] a substantial

risk of harm" to the child. Id. at 330. "[A] failure to

successfully defeat drug addiction does not automatically equate

to child abuse or neglect." Id. at 331. In reversing the finding

of abuse or neglect, this court noted there was no expert proof

showing how the father's drug use posed a risk of harm to the

child. Ibid.

 We reached a similar conclusion in New Jersey Division of

Child Protection & Permanency v. R.W., 438 N.J. Super. 462, 468-

70 (App. Div. 2014), where we reversed a finding of abuse or

neglect that was based solely on the mother's use of marijuana on

one occasion while the child was in her care. We noted the absence

of detailed proof regarding the "circumstances of her ingestion,"

whether "the baby was solely in her mother's care when she was

intoxicated," and "the magnitude, duration, or impact" of the

intoxication. Id. at 470. "Instead of filling in missing

 12 A-1084-15T1
information, an understandable response by judges who regularly

witness the evils inflicted on children by their parents' drug

use, judges must engage in a fact-sensitive analysis turning on

'particularized evidence.'" Ibid. (quoting N.J. Dep't of Children

& Families v. A.L., 213 N.J. 1, 28 (2013)).

 Proof of imminent danger or significant risk is not enough.

"The Division must establish that, at a minimum, a parent acted

with gross negligence or recklessness to succeed in a prosecution

under N.J.S.A. 9:6-8.21(c)(4)(b)." N.J. Div. of Child Prot. &

Permanency v. Y.N., 220 N.J. 165, 181 (2014). "Whether a parent

exercised a minimum degree of care must be analyzed in light of

the dangers and risks associated with the situation." Id. at 184

(internal quotation marks and citation omitted).

 In this context, our Supreme Court has held that significant

school absences would eventually result in permanent harm to a

child's education as a result of "parental inattention or neglect."

In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999). In New

Jersey, parents are required to ensure their children either

regularly attend the public schools of the district in which they

reside or receive instruction equivalent in the public schools.

N.J.S.A. 18A:38-25. Attendance is compulsory. Joye v. Hunterdon

Cent. Reg'l High Sch. Bd. of Educ., 176 N.J. 568, 641 (2003). A

parent who fails to comply with the attendance requirements "shall

 13 A-1084-15T1
be deemed to be a disorderly person[.]" N.J.S.A. 18A:38-31. "The

reference to education contained in N.J.S.A. 9:6-8.21(c)(4)(a)

concerns parental encouragement to truancy of a school age child,

or other interference with normal educative processes." Doe v.

Downey, 74 N.J. 196, 199 (1977) (quoting Doe v. G.D., 146 N.J.

Super. 419, 431 (App. Div. 1976), aff'd, 74 N.J. 196 (1977)).

 Unlike the parental drug use scenarios presented in R.W. and

V.T., defendant continually abused drugs and resisted attempts by

the Division to assist her through assistance programs.

Defendant's drug abuse was causally related to her children's

numerous absences, their unpreparedness, and their poor physical

appearance.

 During the 2012-13 school year, Amelia was absent twenty-six

days. When Amelia was in school, she was described as being

unprepared, appearing unkempt and having a foul odor, lacking

social skills, becoming frustrated easily, and being physically

violent. Similarly, the school expressed concerns about Frank

relating to his learning disabilities and his demonstrated

aggressive behavior. Defendant was not responsive to the school's

reported concerns on either score.

 In light of our standard of review, and applying these

principles, we conclude the Division produced sufficient competent

 14 A-1084-15T1
evidence to demonstrate by a preponderance of the evidence that

defendant's conduct created a risk of harm to her children.

 Affirmed.

 15 A-1084-15T1