# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3466-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

B.O.,

     Defendant-Appellant,

and

T.B.,

     Defendant.

_____

IN THE MATTER OF K.B.,

     a Minor.

_____

Submitted March 3, 2020 – Decided March 23, 2020

Before Judges Gilson and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FN-13-0246-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Dana A. Citron, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Donna Sue Arons, Assistant Attorney General, of counsel; Deirdre A. Carver, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Noel Christian Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

In this Title Nine matter, defendant B.O. appeals a finding that she abused or neglected her eleven-month-old son while caring for him when she was under the influence of an intoxicating substance. We reverse, concluding the trial court's factual and legal findings are not supported by the competent evidence in the record.

I.

We summarize the facts from the limited record developed at the brief fact-finding hearing. The Division of Child Protection and Permanency presented the testimony of one witness, a worker assigned to the Special

2

Response Unit (SPRU) and introduced in evidence the SPRU report. Defendant did not testify or present any evidence.

Defendant and T.B. (Tim)[1] are the biological parents of K.B. (Kyle), born in July 2016. The family has been known to the Division since shortly after Kyle's birth, following allegations of substance abuse by both parents. They live with Tim's parents and sister.

On the evening of the incident, the SPRU worker and a buddy worker responded to the Jersey Shore Medical Center pursuant to a referral by law enforcement that Kyle was taken to the emergency room suffering from bronchial issues. According to the SPRU worker, defendant was on the bed, holding Kyle "in an unstable position[,] . . . moving around a little bit, so the nurse was unable to hold the mask on the baby's face at that time." Kyle was crying "slightly." Defendant attempted "to comfort" Kyle by "patting the baby on the back."

When the SPRU worker identified himself, defendant became "pretty closed off [from] providing any information . . . ." Defendant "wasn't making eye contact," and "appear[ed] to be under the influence of something."

---

[1] We use initials and pseudonyms to protect the privacy of the parties, see R. 1:38-3(d)(12), and for ease of reference. No finding of abuse or neglect was entered against Tim; he is not a party to this appeal.

A-3466-18T4

Following a sustained objection by defense counsel regarding the SPRU worker's ability to render that conclusion, the Division elicited testimony as to his qualifications. The SPRU worker told the judge he had personally worked on cases in which parents had substance abuse issues, and he was "train[ed] in the area of substance abuse and the physical traits that a substance abuser might have while under the influence."

Elaborating about defendant's appearance, the SPRU worker stated she "looked distressed." Defendant "didn't appear to be completely coherent" because "[s]he wasn't fully understanding [his] questions," which required repetition. Defendant's speech was "[s]lightly slurred." According to his entry in the SPRU report, defendant's "eyes looked glassy." The SPRU worker testified that defendant denied "using anything." He "believe[d]" defendant disclosed she "recently" had taken a prescription medication, but he could not recall "what the prescription was for." He acknowledged he had not seen or obtained any hospital records indicating defendant had been drug tested, adding, "I as a SPRU worker don't do that."

Following summations, the trial court issued a terse oral decision, finding defendant was under the influence while she was responsible for Kyle, thereby placing him at risk of harm. The court based its decision on the observations of

4

the SPRU worker in light of his training and experience "with individuals who may or may not have used drugs." The court entered the order under review in March 2018. One year later, the litigation was terminated based on the parents' cooperation.

On appeal, defendant contends there was insufficient evidence to support the trial court's finding she abused or neglected Kyle. In particular, she claims the Division failed to prove Kyle was actually harmed or placed in imminent danger of being harmed; the court failed to make any findings that she was grossly negligent or reckless; and the SPRU worker was not qualified to render an opinion that defendant was under the influence, which required expert testimony. Kyle's law guardian joins the Division in urging us to affirm.

II.

A.

Ordinarily, we defer to the Family Court's factual findings, as long as they are supported by substantial credible evidence in the record. N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 226 (2010); N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007). But, we will not hesitate to set aside a ruling that is "so wide of the mark that a mistake must have been made." M.M., 189 N.J. at 279 (internal quotation marks omitted). "Where the issue to be

decided is an 'alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom,' we expand the scope of our review." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (citation omitted). We also accord no deference to the trial court's legal conclusions, which we review de novo. State v. Smith, 212 N.J. 365, 387 (2012); see also Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

In a Title Nine action, the Division must prove by a preponderance of "competent, material, and relevant evidence" that a child is abused or neglected. N.J.S.A. 9:6-8.46(b). An "abused or neglected child" under Title Nine is defined, in pertinent part, as:

> a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent . . . to exercise a minimum degree of care (a) in supplying the child with adequate food, clothing, shelter, education, medical or surgical care though financially able to do so or though offered financial or other reasonable means to do so, or (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4)(a) and (b).]

The statute does not require that a child experience actual harm. N.J. Dep't of Children & Families v. E.D.-O., 223 N.J. 166, 178 (2015). "[B]ut in a case

6

where there is no such proof, the critical focus is on evidence of imminent danger or substantial risk of harm," N.J. Dep't of Children & Families v. A.L., 213 N.J. 1, 22 (2013), and "must be resolved on a case-by-case basis." E.D.-O., 223 N.J. at 192. Title Nine cases are fact-sensitive, and the court should "base its findings on the totality of circumstances . . . ." N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 329 (App. Div. 2011).

Our Supreme Court has instructed that the abuse and neglect standard is satisfied when the Division demonstrates – by a preponderance of the evidence at the fact-finding hearing – a parent has failed to exercise a minimum degree of care. See, e.g., G.S. v. Dep't of Human Servs., 157 N.J. 161, 181 (1999). A "minimum degree of care" encompasses conduct that was grossly or wantonly negligent, but not necessarily intentional. Id. at 178. Wanton negligence is conduct that was engaged in with the parent's knowledge that injury is likely to result. Ibid. Mere negligence does not trigger the statute. N.J. Dep't of Children & Families v. T.B., 207 N.J. 294, 306-07 (2011); G.S., 157 N.J. at 172-73. "[W]hether a parent's conduct is negligent or grossly negligent requires an evaluation of the totality of the circumstances." E.D.-O., 223 N.J. at 170-71. In undertaking this analysis, the Court has warned trial and appellate courts "must avoid resort to categorical conclusions." Id. at 180.

A-3466-18T4

B.

Assuming arguendo that the SPRU worker was qualified to testify defendant was under the influence, we first address the sufficiency of the evidence adduced at the hearing.  While we continue to recognize the societal concern that parents should not care for children while under the influence of intoxicating substances, we have avoided a categorical approach in cases involving the combination of drugs and parenting.

For example, in V.T., we recognized "not all instances of drug ingestion by a parent will serve to substantiate a finding of abuse or neglect."  V.T., 423 N.J. Super. at 332.  Indeed, "Title Nine is not intended to extend to all parents who imbibe illegal substances at any time.  The Division would be quickly overwhelmed if law enforcement was required to report every individual under the influence who had children."  Id. at 331.

In V.T., proof of a parent's drug use by itself was not enough to sustain a finding of abuse or neglect, where a father used drugs prior to his supervised visits with an eleven-year-old child.  Ibid.  We held that a father's use of cocaine and marijuana and failure to complete drug treatment did not "inherently create[] a substantial risk of harm" to the child.  Id. at 330.  We noted there was no expert

8

proof showing how the father's drug use posed a risk of harm to the child in that supervised setting. Id. at 331.

Similarly, we reversed a finding of abuse and neglect based solely on a mother's use of marijuana, on one occasion, while the child was in her care. N.J. Div. of Child Prot. & Permanency v. R.W., 438 N.J. Super. 462, 468-70 (App. Div. 2014). We noted the absence of detailed proof regarding the "circumstances of her ingestion," whether "the baby was solely in her mother's care when she was intoxicated," and "the magnitude, duration, or impact" of the intoxication. Id. at 470.

And, in N.J. Div. of Youth & Family Servs. v. S.N.W., 428 N.J. Super. 247, 257-58 (App. Div. 2012), we held the mere fact that a parent appeared inebriated is not necessarily determinative of whether that parent was providing a minimum degree of care. We therefore vacated an order that had been based solely on a determination that the parent had abused or neglected her twenty-month old and five-month old children by appearing inebriated. Ibid. We concluded the trial judge failed to determine the parent's degree of culpability, particularly in light of uncertainty about whether the parent had exceeded the prescribed amount of medication she was then taking and whether that

circumstance prevented her from being able to provide a minimum degree of care. Ibid.

Applying these principles, we are persuaded that the Division's proofs fell short under the circumstances presented in this case. The record is devoid of any competent evidence that defendant was unable to meet Kyle's basic needs while in the supervised setting of the hospital. For example, the trial court did not find defendant failed to make appropriate medical decisions for Kyle, refused the nurse's attempts to apply the oxygen mask, or otherwise interfered with Kyle's treatment. Notably, despite defendant's apparent condition,[2] hospital staff did not remove Kyle from defendant's care and permitted her to continue to hold Kyle while the nurse attempted to treat him. Accordingly, no testimony was elicited about "the magnitude, duration, or impact" of defendant's purported impairment. R.W., 438 N.J. Super. at 470.

We therefore cannot conclude on the record before us that the proofs of defendant's conduct and condition amounted to gross negligence. T.B., 207 N.J. at 309.

---

[2] Recognizing the worker's testimony that Kyle's physician and nurse believed defendant was under the influence was inadmissible as hearsay, the trial court nonetheless postulated "if [they] had concerns, they would have removed the child from the mother's care immediately, but they did not do so. And they allowed [defendant] to continue to hold the child."

C.

Given our decision on the insufficiency of the evidence, we need not reach defendant's contention that the SPRU worker was not qualified to opine she was under the influence. We simply acknowledge we have long held lay witness testimony may be sufficient evidence of alcohol intoxication, State v. Guerrido, 60 N.J. Super. 505, 510-11 (App. Div. 1960), pursuant to N.J.R.E. 701, but the Court has cautioned "expert testimony remains the preferred method of proof of marijuana intoxication[,]" pursuant to N.J.R.E. 702, State v. Bealor, 187 N.J. 574, 592 (2006).

Here, the alleged intoxicant at issue was unknown. The SPRU worker testified defendant "appear[ed] to be under the influence of something"; defendant told him she had taken a "prescription" earlier in the day. At the hearing, the SPRU worker could not "recall off the top of [his] head" the identity of that medication. According to the SPRU report, however, defendant told the workers she had taken Subutex. No testimony was elicited as to the side-effects of that prescribed medication. For example, the SPRU worker was not asked whether Subutex could cause glassy eyes or "slightly slurred" speech. At best, the SPRU worker's observations support a finding that defendant ingested some unknown substance at some point on the day of the incident. Importantly,

however, the SPRU worker's testimony did not sufficiently describe defendant's actions to establish she was under the influence of any substance that prevented her from properly caring for Kyle in the hospital.  See R.W., 438 N.J. Super. at 470.

We therefore conclude the trial court erred in permitting the SPRU worker to opine defendant was under the influence, under the specific facts of this case. The Division failed to present sufficient evidence to describe the defendant's level of alleged substance abuse or connect her level of use with her impairment. While the court properly admitted the SRPU worker's lay observations of the defendant in the record, his conclusion that she was under the influence was not supported by the competent evidence in the record.

* * *

In sum, the Division failed to present sufficient, credible evidence that Kyle was in imminent danger or at a significant risk of harm as a result of defendant's failure to exercise a minimum degree of care.  We emphasize that our decision should not be understood to condone the use of illicit substances. Because the evidence the Division presented was insufficient to establish abuse or neglect pursuant to N.J.S.A. 9:6-8.21(c)(4)(a) or (b), however, we are

constrained to reverse the trial court's decision, and order the Division to remove the incident from defendant's existing entry in the Central Registry.

Reversed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3466-18T4