# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1368-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

D.C.G.,

     Defendant-Respondent,

and

D.R.S.,

     Defendant.

_____

IN THE MATTER OF
A.S., a minor.

_____

Argued February 10, 2022 – Decided March 22, 2022

Before Judges Alvarez and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FN-14-0062-20.

Patricia Nichols, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Patricia Nichols, of counsel and on the briefs; Anne E. Gowen, Designated Counsel, on the briefs).

Jessica A. Prentice, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Jessica A. Prentice, on the brief).

Noel C. Devlin, Assistant Deputy Public Defender, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Noel C. Devlin, of counsel; Samantha Kelly, admitted pursuant to Rule 1:21-3(b), on the brief).

PER CURIAM

In order to meet its burden pursuant to N.J.S.A. 9:6-8.46(b), plaintiff New Jersey Division of Child Protection and Permanency (Division) must, by a preponderance of the credible evidence, establish that a child has been abused or neglected. N.J. Div. of Child Prot. & Permanency v. J.R.-R., 248 N.J. 353,

2

A-1368-20

369 (2021). Because we find the Division did not meet that standard as to defendant D.C.G. (Sarah),[1] we now reverse.

The statute defines an abused or neglected child as one whose well-being is "impaired or is in imminent danger of becoming impaired as the result of the failure of his parent . . . to exercise a minimum of care . . . (b) in providing the child with proper supervision[.]" N.J.S.A. 9:6-8.21(c)(4)(b). At approximately 1:00 a.m. on October 30, 2019, Sarah, mother of then one-year-old A.S., consumed illegal drugs while visiting the child's paternal grandparents. The child's father, D.R.S. (Tom), had left the home for an unspecified amount of time to go to a convenience store. The child, the child's paternal grandparents, and Sarah were each sleeping in separate rooms.

When Tom returned, he found Sarah unconscious. His father, hearing the commotion, called 911. The officers described Sarah as "lying on her side in a pool of her own vomit making a snoring sound."

Sarah was transported to a nearby hospital after the officers' administration of two doses of Narcan failed to rouse her. Tom reported to the officers that Sarah had been using heroin and Xanax, and turned over three

---

[1] We use pseudonyms for defendants' names to protect the identity of the minor child. See R. 1:38-3(d)(12).

empty folds of suspected heroin that he claimed belonged to Sarah. At the time, Tom was on probation for drug offenses. Later, Tom told a Division worker that Sarah "was taking hits of a Xanax bar all day" and snorted heroin around midnight.

Three days later, Sarah allegedly acknowledged to hospital staff that she had consumed Xanax bought on the street that was likely "laced with something." She denied having taken any other drug.

The hospital drug screen administered on Sarah's admission was negative. A hair follicle test the following month was also negative. The Division worker testified she had heard hair dye can interfere with follicle testing, but no expert testimony was proffered. It is undisputed that Sarah had a drug addiction problem she had previously treated unsuccessfully.

In his June 16, 2020 decision, the trial judge found the caseworkers credible. He also found that because the paternal grandparents were asleep in the middle of the night, they were unable to "act[] in a parental role." The judge concluded that Sarah's consumption of illegal drugs, which rendered her unconscious, placed the child in imminent danger, thus making the child abused and neglected within the meaning of the statute.

A-1368-20

We address only Sarah's central issue on appeal—that the Division did not meet the relevant standard of proof by a preponderance of the evidence. In light of our decision on this point, the other appeal issues are moot. A brief discussion of the relevant cases drives the outcome.

An abuse or neglect finding may be premised upon "imminent danger[;]" the parents' conduct need not cause actual harm. N.J. Div. of Child Prot. & Permanency v. K.G., 445 N.J. Super. 324, 341 (App. Div. 2016). Where no actual harm is alleged, the court must focus on "the likelihood of future harm[.]" N.J. Div. of Child Prot. & Permanency v. J.C., 440 N.J. Super. 568, 577 (App. Div. 2015). "Any allegation of child neglect in which the conduct of the parent or caretaker does not cause actual harm is fact-sensitive and must be resolved on a case-by-case basis." K.G., 445 N.J. Super. at 342 (quoting Dep't of Children & Fam. v. E.D.-O., 223 N.J. 166, 192 (2015)).

In J.C., for example, a parent consumed alcohol while caring for her three-year-old son. Id. at 570. She claimed that she stopped drinking before he was dropped off by his father at her apartment, but the trial court disbelieved this assertion. Id. at 573, 575. As a result of her alcohol consumption, the mother slept through the morning the next day, leaving the child effectively unsupervised. Id. at 570, 573. At around noon, DCPP workers arrived at her

home for a previously scheduled appointment. Id. at 573. The workers, observing that J.C.'s apartment door was ajar, called her name, but she did not answer. Ibid. They let themselves in and saw the toddler wandering around wearing a dirty diaper. Ibid. Shortly thereafter, J.C. emerged from her room; her appearance was disheveled, and she smelled of alcohol. Ibid. When one of the workers pointed out that her son's diaper was dirty, she ordered the child to clean himself up. Ibid.

On appellate review, the mother's conduct was not found to be grossly negligent. Id. at 579-80. We reasoned that she could not have known that her door was ajar because, as she explained to DCPP, a friend had visited earlier in the day and failed to close it properly—which assertion was unrefuted. Id. at 579. Furthermore, "[e]ven if [the mother] had continued to drink, as the judge surmised, and slept in late the next morning as a result, there is no proof that her behavior created a substantial risk of harm to" her son. Ibid. To hold that such conduct constituted child abuse would be to classify many "responsible parents" as abusers, and that result was unacceptable. Ibid.

In N.J. Division of Youth & Family Services v. V.T., 423 N.J. Super. 320, 331-32 (App. Div. 2011), and N.J. Division of Child Protection & Permanency v. R.W., 438 N.J. Super. 462, 468 (App. Div. 2014), mere substance abuse while

A-1368-20

in the presence of a child did not suffice to establish abuse or neglect. In V.T., a father was under the influence of narcotics while engaging in supervised visits with his daughter—which did not prove the child was exposed to any risk. 423 N.J. Super. at 331.

In R.W., the trial judge found that the mother's use of marijuana while in the community, while responsible for her baby, sufficed for an abuse and neglect judgment. The Division had relied exclusively on a screening summary statement in which the mother admitted to the conduct. 438 N.J. Super. at 468. As we reiterated in R.W., based on language in V.T., although it is of crucial importance in society that children are not cared for by intoxicated parents, "not all instances of drug ingestion by a parent will serve to substantiate a finding of abuse or neglect." Id. at 470. "[I]nstead of filling in missing information, an understandable response by judges who regularly witness the evils inflicted on children by their parents' drug use, judges must engage in a fact-sensitive analysis turning on 'particularized evidence.'" Ibid.

The particularized evidence here establishes that Sarah's child was not exposed to imminent risk from her mother's drug use. There were other adults in the house, namely Tom's parents. The child was asleep, and the drug use

A-1368-20

happened during the night. The father left the apartment for some brief period of time, intending to return.

That the grandparents were in close proximity to both mother and child is established by the fact the grandfather called 911 when Sarah's condition was discovered. The record is devoid of evidence, for example, observations by the police officers, that Tom would have been unable to care for the child upon his return.

The potential harms the Division proffered were no more than speculation—such as that the grandparents might not have been able to care for the child, or that Sarah might have been hallucinating. It is the Division, not Sarah, who bears the burden of proof, and proof of "imminent danger" requires more than demonstrated here. See N.J.S.A. 9:6-8.21(c)(4)(b).

As a matter of law, which we review de novo, we find that the allegations in this case did not establish that Sarah's conduct exposed her child to imminent danger or a substantial risk of harm. K.G., 445 N.J. Super. at 342; N.J.S.A. 9:6-8.21(c)(4)(b).

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1368-20