**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2435-12T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

      Plaintiff-Respondent,

  v.

J.A.,

      Defendant-Appellant.

_____

IN THE MATTER OF S.B. and S.A.,

      Minors.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **June 9, 2014** |
| **APPELLATE DIVISION** |

Submitted May 28, 2014 — Decided June 9, 2014

Before Judges Fisher, Koblitz and O'Connor.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FN-02-78-11.

Joseph E. Krakora, Public Defender, attorney for appellant (Elizabeth D. Burke, Designated Counsel, on the brief).

John J. Hoffman, Acting Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Sara M. Gregory, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Olivia Belfatto Crisp, Assistant Deputy Public Defender, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, we conclude that a parent fails to exercise the minimum degree of care required by N.J.S.A. 9:6-8.21(c)(4) when permitting children to be passengers in a vehicle driven by a person who appears to be inebriated.

Here, defendant J.A. (defendant) appeals a finding of abuse and neglect, N.J.S.A. 9:6-8.21(c)(4), based on his failure to prevent defendant S.B. (Susan, a fictitious name) from driving their children[1] while she was intoxicated. In affirming, we find no merit in defendant's argument that the facts only support a finding that he was mistaken about whether Susan was capable of safely transporting the children by motor vehicle or that his acts or omissions did not rise to the level of gross negligence.

This action was commenced against defendant and Susan, based on a referral to plaintiff Division of Youth and Family Services, now known as the Division of Child Protection and Permanency (the Division), regarding a motor vehicle incident on Sunday, May 23, 2010. The judge heard evidence that defendant, Susan, and the two children spent the weekend in Wildwood.

---

[1] Defendants are not married. The children in question are Sh.B., who was then eight-years old, and S.A., then two-years old. Defendant is the father of S.A., not the older child. Susan ultimately stipulated to an act of abuse and neglect with regard to her conduct.

After spending Sunday morning at a pool, the family had lunch together. The Division caseworker testified that the older child informed her that Susan drank two Bloody Marys and five or six beers. Defendant drank only "a few beers" because he intended on driving the car home to Garfield that afternoon. While packing the car for the trip home, however, defendant noticed a tail light was not functioning — a fact that apparently altered his mind about driving; defendant acknowledged during an interview with a Division caseworker that his license was then under suspension for driving while intoxicated.

Consequently, Susan drove the family home. During the trip, they stopped for dinner. According to the older child, the adults had two beers each. The child also told the caseworker that her mother was difficult to understand when she spoke.

The couple argued during the trip north on the Garden State Parkway. The older child expressed concern when they rode by three parked police vehicles because their car was, in her words, "going side to side," but Susan said she should not worry and that "everything [would be] fine." Later, the child pointed out another police vehicle; this time, the police vehicle pursued and eventually directed Susan to stop at a location on the Garden State Parkway, approximately twenty-five miles north of Wildwood. After participating in field sobriety tests, Susan

was arrested and escorted into a police vehicle. An Alcotest determined her blood alcohol content (BAC) was .19, well in excess of the legal limit, N.J.S.A. 39:4-50(a) (declaring the legal limit to be a BAC of .08).

Defendant was interviewed by a Division caseworker on May 28, 2010. His statements conformed to the child's regarding Susan's consumption of alcohol that day, but he claimed he did not realize Susan was intoxicated, otherwise he would not have permitted her to drive. He also agreed with the child's assertion that he and Susan had argued over the weekend.

Defendant agreed to submit to urine screens at the Division's request. Two screens in June 2010 were negative, but a July 20, 2010 urine screen proved positive for cocaine and alcohol. When asked by the Division caseworker about the positive screen, defendant asserted that someone must have tampered with his drink a few days earlier; he claimed a mutual friend he was with at that time was a known seller of cocaine.

The trial judge rendered a thorough written decision on June 2, 2011. He found, by a preponderance of the evidence, that on Sunday, May 23, 2010, Susan was exhibiting signs of alcoholic impairment — slurred speech, an odor of alcohol on her breath, the swerving of her vehicle, argumentativeness, and "swaying" while standing or walking — and that defendant "knew

[Susan] was under the influence of alcohol [and] should not have driven the vehicle in that condition with the children as passengers." Although the judge rejected defendant's contention that the positive urine screen in July 2010 occurred because, in the judge's words, defendant was "slipped . . . a Mickey," the judge also found the Division's proofs inadequate to support a finding that a child was put at risk as a result; he, therefore, rejected that particular aspect of the Division's case.

Compliance hearings were conducted over the following twelve months, ultimately leading to the return of physical and legal custody to the parents and the dismissal of the action.

Defendant appeals, arguing:

> I. THE LOWER COURT ERRED BY ADMITTING [THE OLDER CHILD'S] STATEMENTS INTO EVIDENCE AS UNCORROBORATED HEARSAY CONTRARY TO N.J.S.A. 9:6-[8.46(a)(4)].
>
> II. EVEN ASSUMING [THE OLDER CHILD'S] STATEMENTS ARE ADMISSIBLE, [DEFENDANT'S] ACTIONS WERE MERELY NEGLIGENT AND THEREFORE DO NOT QUALIFY AS ABUSE AND NEGLECT.

We find no merit in these arguments.

I

Defendant first contends that the statements given by the older child to the Division caseworker were inadmissible because they were uncorroborated. Defendant is wrong in two respects.

Contrary to defendant's argument, an uncorroborated statement by a child is admissible. The limitation imposed in such circumstances arises from the Legislature's declaration that such an uncorroborated statement, although admissible, is not alone "sufficient to make a fact finding of abuse or neglect." N.J.S.A. 9:6-8.46(a)(4). Stated another way, "a child's hearsay statement may be admitted into evidence, but may not be the sole basis for a finding of abuse or neglect." N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 33 (2011). As a result, the judge did not err in permitting the Division caseworker to recount the older child's statements.

We also conclude that the child's statements were more than sufficiently corroborated. In general, corroborative evidence need not be direct so long as it provides some support for the out-of-court statements. N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 436 (App. Div. 2002); see also N.J. Div. of Child Prot. & Permanency v. M.C., __ N.J. Super. __, __ (App. Div. May 5, 2014) (slip op. at 25); N.J. Div. of Youth of Family Servs. v. L.A., 357 N.J. Super. 155, 166 (App. Div. 2003). The child's statements regarding both the extent of her mother's drinking that day and her state of inebriation were corroborated in many ways. For example, the police report memorialized the officer's observations that the vehicle

"fail[ed] to maintain [its] lane of traffic," and that Susan's speech was "slow and slurred." Defendant also corroborated the child's statements about Susan's drinking, acknowledging in his statement to the Division that Susan "ha[d] a few Bloody Marys and some beers" shortly before the family embarked on the trip with Susan at the wheel.

## II

We also reject defendant's second and last argument[2] that the circumstances found by the trial judge do not support a finding of abuse or neglect.

---

[2]Defendant has not included in his brief a separate point asserting that the judge's findings were against the weight of the evidence, see R. 2:6-2(a)(5) (directing that the argument is to be "divided, under appropriate point headings . . . into as many parts as there are points to be argued"); Midatlantic Solar Energy Indus. Ass'n v. Christie, 418 N.J. Super. 499, 508 (App. Div.) (noting that the presentation of a separate argument in any other manner than that set forth in Rule 2:6-2(a)(5) is "improper" and such an argument will be overlooked unless it presents a matter of general public importance), certif. denied, 207 N.J. 190 (2011), although such an argument may be discerned from the balance of defendant's contentions. To the extent defendant has intended to make such an argument, we find it has insufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). We would add only that the evidence more than amply supports the judge's findings and, thus, the applicable standard of review precludes our second-guessing of those findings. Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974). This is especially true in this context, where findings are entitled to additional deference because of family judges' "special expertise in the field of domestic relations." Cesare v. Cesare, 154 N.J. 394, 413 (1998). We, thus, find no merit in the argument that the
(continued)

A parent or guardian who permits a child to ride with an inebriated driver acts inconsistently with N.J.S.A. 9:6-8.21(c)(4), which defines an "abused or neglected child" as a child under the age of eighteen years:

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof[.]

The Legislature provided no greater clarity about the reach of the phrase "minimum degree of care." The Supreme Court ascertained that it means "grossly or wantonly negligent, but not necessarily intentional" conduct. G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1999). In that sense, a parent fails to exercise a minimum degree of care when, despite being "aware of the dangers inherent in a situation," the parent "fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181. The parent is held to what "an ordinary reasonable person would understand" in considering whether a situation "poses dangerous risks" and

---

(continued)
judge erred in determining that defendant should have been well aware Susan was in no condition to drive.

whether the parent acted "without regard for the potentially serious consequences." Id. at 179.

Our Supreme Court later illuminated G.S.'s interpretation, explaining that "every failure to perform a cautionary act is not abuse or neglect"; "[w]hen the failure to perform a cautionary act is merely negligent, it does not trigger" the statute. N.J. Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 306-07 (2011). The focus on the parent's level of culpability in assessing whether a minimum degree of care has been exercised

> is in synchronicity with the Legislature's expressed purpose to safeguard children. Indeed, where a parent or guardian acts in a grossly negligent or reckless manner, that deviation from the standard of care may support an inference that the child is subject to future danger. To the contrary, where a parent is merely negligent there is no warrant to infer that the child will be at future risk.
>
> [Id. at 307.]

The application of this standard in the present context is further informed not only by our motor vehicle laws, which show little tolerance for the mixing of alcohol and driving,[3] but also by a growing body of case law demonstrating the dangers imposed

---

[3]A circumstance certainly familiar to defendant, whose driving privileges were suspended at the time due to a conviction for driving while under the influence.

for child-occupants of motor vehicles. See N.J. Dep't of Children & Families v. R.R., __ N.J. Super. __, __ (App. Div. 2014) (slip op. at 6-10) (affirming an abuse/neglect finding when a school bus driver left a five-year old unattended on a bus for nearly an hour); N.J. Dep't of Children & Families v. E.D.-O., 434 N.J. Super. 154, 160-62 (App. Div. 2014) (affirming an abuse/neglect finding when the mother left her nineteen-month-old child unattended in a motor vehicle while she briefly entered a nearby store). For the reasons outlined in greater depth in those cases, as further amplified by the examples cited by the Supreme Court in T.B., supra, 207 N.J. at 307-10, we conclude that no reasonable person could fail to appreciate the danger of permitting children to ride in a motor vehicle driven by an inebriated operator. Defendant was grossly negligent in failing to protect the children from the imminent risk posed by Susan's driving.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2435-12T2