# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2044-16T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

H.L.

    Defendant-Appellant.

_____

IN THE MATTER A.L. and
A.L., Minors.

_____

Submitted June 5, 2018 — Decided June 26, 2018

Before Judges Moynihan and Natali.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FN-20-0057-16.

Joseph E. Krakora, Public Defender, attorney for appellant (Marc R. Ruby, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Mary C. Zec, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Karen A. Lodeserto, Designated Counsel, on the brief).

PER CURIAM

H.L. appeals the trial court's finding of abuse or neglect, N.J.S.A. 9:6-8.21(c)(4), based on grossly negligent conduct that exposed her children, Chloe and Charlie[1] — both under the age of five — to a substantial risk of harm. She argues, "[n]either Chloe nor Charlie were harmed, or even in danger. And there was insufficient competent evidence supporting the finding that [she] failed to exercise a minimum degree of care at the time of the incident" when she left the children "in the supervised care of an adult, inside a home with dirty dishes, and a roach problem, while she drank a few beers, before visiting her dying husband's hospital bedside." We are unpersuaded and affirm.

Following a fact-finding hearing conducted pursuant to N.J.S.A. 9:6-8.44, the trial judge found the Special Response Unit (SPRU) investigator and intake supervisor who testified for the New Jersey Division of Child Protection and Permanency were "extremely prepared" and testified "from personal knowledge." He characterized the SPRU investigator's "recall and preparation [as] compelling," concluding she "testified so very credibly."

---

[1] We use the same pseudonyms for the children — including H.L.'s adult son — as did H.L. in her merits brief.

From that testimony, as confirmed by H.L.'s merits brief, the Division commenced this action after it received a referral from the hospital at which H.L. visited her dying husband in October 2015, leaving the children in the care of her adult son, Jackson. Hospital workers informed the SPRU investigator that they observed blood on H.L.'s forehead — which she attributed to nail polish — and that she appeared intoxicated. After receiving information that H.L. — who was no longer present at the hospital — had an open case with the Division and that there were concerns about her alcohol use, the investigator proceeded to H.L.'s residence to check on her younger children.[2]

The trial judge found from the investigator's testimony that the condition of H.L.'s apartment when she arrived had changed drastically from that reported just two months prior; it was littered with food and clothes, infested with roaches and flies, and wires were "all over" the children's bedrooms. The children were found "smelly [and] dirty."

The judge, crediting the investigator's testimony, found Chloe told the investigator that she saw H.L. and Jackson "drink beer all the time" and that H.L. "gets crazy and she falls down."

---

[2] The judge admitted the evidence the SPRU investigator gathered at the hospital only to show how it informed the investigator's further actions.

A-2044-16T2

The investigator also observed H.L. when she returned to the apartment "walking [in the middle of the street] from side to side like . . . she was about to fall." Recalling Chloe's statement about her mother falling after drinking, the judge rejected H.L.'s attribution of her wobbly gait to an ankle injury or "chronic ankle trouble," also noting she did not report an ankle problem until she was later interviewed by the intake supervisor. He also observed that H.L. completed "an hour walk to a hospital" that morning. When the investigator approached H.L., she observed a cut on her forehead and that H.L. smelled like alcohol. H.L. related that she had fallen at the hospital and had consumed two beers that morning; she denied that she was drunk or had a drinking problem. H.L. later told the intake supervisor she did not realize that her face was bleeding and that she had just one beer that morning to settle her stomach before going to the hospital.

The judge also found unavailing that Jackson was an acceptable caretaker for the children while H.L. was at the hospital. The judge opined Jackson, who lived in the apartment,

> better have a better clue about what's acceptable. There has to be boxes of soap. There has to be sinks you can wash things in. There have to be garbage cans where old food can be thrown out, so you have less opportunity for flies and roaches . . . .
>
> It's not healthy and it's creating a more significant, substantial risk of harm to the

A-2044-16T2

> children to have the presence of roaches and
> flies and food out.

From this evidence the judge properly inferred defendant had a drinking problem for which she did not seek help from the Division's "treasure chest" of available resources.[3]  H.L.'s drinking, he found, resulted in bizarre behavior including medically treating an upset stomach with beer and failing to recognize her head injury.  Moreover, he found her drinking and failure to address that problem resulted in the unacceptable "way [the children] smelled, the way they were clothed, the mess and disarray of the house," conditions that would reoccur until H.L. addressed her drinking problem.  The judge concluded the Division proved the children were abused and neglected as provided under N.J.S.A. 9:6-8.21(c)(4)(b), which defines such a child as one under the age of eighteen years:

> whose physical, mental, or emotional condition
> has been impaired or is in imminent danger of
> becoming impaired as the result of the failure
> of his parent or guardian . . . to exercise a
> minimum degree of care . . . in providing the
> child with proper supervision or guardianship,
> by unreasonably inflicting or allowing to be
> inflicted harm, or substantial risk thereof

---

[3] The trial judge considered that H.L. was referred in August 2015 for a substance abuse evaluation that resulted — based on negative urine screens and H.L.'s self-reported history — in a recommendation that no treatment was necessary, only as evidence that H.L. knew services were available from the Division to address an alcohol problem.

. . . or by any other acts of a similarly
serious nature requiring the aid of the court.

We measure a "minimum degree of care" by the Supreme Court's definition: "grossly or wantonly negligent, but not necessarily intentional" conduct, G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1999), such that a parent, "aware of the dangers inherent in a situation . . . fails adequately to supervise the child or recklessly creates a risk of serious injury to that child," id. at 181.

As we recognized in N.J. Div. of Child Prot. & Permanency v. J.A., 436 N.J. Super. 61, 69 (App. Div. 2014):

> Our Supreme Court later illuminated G.S.'s interpretation, explaining that "every failure to perform a cautionary act is not abuse or neglect"; "[w]hen the failure to perform a cautionary act is merely negligent, it does not trigger" the statute. N.J. Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 306-07 (2011). The focus on the parent's level of culpability in assessing whether a minimum degree of care has been exercised
>
>> is in synchronicity with the Legislature's expressed purpose to safeguard children. Indeed, where a parent or guardian acts in a grossly negligent or reckless manner, that deviation from the standard of care may support an inference that the child is subject to future danger. To the contrary, where a parent is merely negligent there is no warrant to infer that the child will be at future risk.

6

> [Id. at 307 (alteration in original).]

When we apply this legal standard to our standard of review, deferring to the trial judge's fact findings that are rooted in the judge's familiarity with the case, opportunity to make credibility findings based on live testimony, and family judges' expertise in handling these cases, Cesare v. Cesare, 154 N.J. 394, 411-413 (1998), we affirm the trial court's finding of abuse and neglect which is supported by the substantial, credible evidence in the record, N.J. Div. of Youth and Family Servs. v. E.P., 196 N.J. 88, 104 (2008). Reviewing, as we must in abuse and neglect cases, the totality of the circumstances, N.J. Div. of Youth and Family Servs. v. P.W.R., 205 N.J. 17, 39 (2011), we do not conclude the trial court's fact-findings or inferences were erroneously drawn, N.J. Div. of Child Prot. & Permanency v. S.I., 437 N.J. Super. 142, 152 (App. Div. 2014).

H.L.'s drinking sufficiently impaired her judgment so that — as evidenced by the children's condition and that of their home — there was a substantial risk of harm. See N.J. Dep't of Children & Families v. A.L., 213 N.J. 1, 23 (2013) (holding "a finding of abuse and neglect can be based on proof of imminent danger and substantial risk of harm"). Even absent proof of actual harm, her failure to recognize and then address her problem, especially when

services were available from the Division, created a risk of serious injury to the children. "Courts need not wait to act until a child is actually irreparably impaired by parental inattention or neglect." In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999).

The findings by the trial judge did not fully detail the sordid conditions found by the SPRU investigator. The record reflects a "really foul odor" emanated from the apartment; food was present in dishes in the sink, stove-top pots and on the table; the apartment walls were "filthy" and "[v]ery dirty [with] black stains"; the refrigerator was dirty and stained; the children's sleeping quarters were hazardous. The judge found the household — and the children's — conditions would continue; there is no evidence they would be remediated in light of the judge's findings that the mother chose alcohol over the care of her children. His findings were sufficient to elevate this case to one of gross negligence. As the judge found, H.L. was aware of the dangers her continued drinking presented but failed to adequately supervise her children and recklessly created a risk of serious injury to them.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2044-16T2