# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0033-18T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

T.A.K.,

     Defendant-Appellant,

and

L.W., D.J., T.R.J., and M.B.,

     Defendants.

_____

IN THE MATTER OF Z.W.,
L.Z.W., S.M.W., and A.W.,

     Minors.

_____

Submitted August 13, 2019 – Decided September 5, 2019

Before Judges Messano and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FN-04-0410-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Phuong V. Dao, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; William T. Harvey, Jr., Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Linda Vele Alexander, Designated Counsel, on the brief).

PER CURIAM

In this appeal, we consider whether there was sufficient credible evidence supporting a Family Part order finding that defendant, T.A.K. (Tyler),[1] abused or neglected his three cousins, A.W. (Allison), born in June 2009, S.W. (Sasha) born in March 2012, and L.Z.W. (Lisa), born in April 2014, by sexually abusing Sasha and Lisa, and by subjecting Allison to excessive corporal punishment. Because we conclude there was sufficient credible evidence supporting the court's factual findings and determination, we affirm.

I.

---

[1] We employ initials and pseudonyms to protect the privacy of the parties and children.

A-0033-18T2

L.W. (Lucy) is the biological mother of the three children at issue in this appeal. The Division of Child Protection and Permanency (Division) has had extensive involvement with Lucy and her family, having received over a dozen referrals since 2011. The latest of these referrals occurred on January 26, 2017, when the Division was contacted by Allison's school nurse. Allison reported that she was in pain because the night before Tyler, while babysitting her, Sasha and Lisa, became angry and struck her with an extension cord on her buttocks. Long, thin abrasions were observed on both sides of Allison's hip and buttock areas.

Division caseworkers Jared Owen and Wanda Roman responded to Allison's school that same day. According to Allison, Tyler became angry when he learned she took an electronic device into the bathtub and shower area. He told her to get out of the tub and hit her with an extension cord as punishment while she was not fully dressed.

Roman testified at the fact-finding proceeding that Allison's lower back and legs were bruised and her legs had linear marks. She confirmed that the photos presented at the fact-finding proceeding fairly and accurately represented the bruising she observed. The next day, Lucy agreed that Tyler would no longer

3

serve as a caretaker for the children, and executed a conforming safety protection plan.

Five days later, the Division received another referral involving Tyler and the girls. Specifically, Allison told her guidance counselor, Genevieve Cattanea (Cattanea), that she saw Tyler inappropriately touching her sisters at home. The Division contacted the Camden County Prosecutor's Office, and advised that a safety protection plan was in place preventing Tyler from caring for the children. In response, Detective Kevin Courtney of the Camden County Prosecutor's Office interviewed Allison who stated that Tyler smoked marijuana and did "nasty things" to Sasha and Lisa including "hump[ing]" Sasha and placing his penis inside of her, and making Sasha sit on him without pants on. Allison also reported that Tyler forced Lisa to "suck his penis."

Detective Courtney informed a Division caseworker that Allison reported that Tyler was still caring for her and her sisters despite the continued prohibition in the safety protection plan. When the Division investigated, the police were at the home and confirmed that Tyler was alone with Lisa.

Owen interviewed Tyler about Allison's sexual and physical abuse allegations. Although he denied that he sexually abused either Sasha or Lisa, he

4

did admit to striking Allison with an extension cord.  The Division immediately conducted a Dodd removal of the children.[2]

Owen and Roman then went to Allison's school where she reported she did not want to go back home and stated to the caseworker that after her initial disclosures, Tyler and Lucy reprimanded her for discussing "family business." Allison also reaffirmed that Tyler did "nasty things" multiple times with Sasha and Lisa such as making them get naked, "hump[ing] on" Sasha, and forcing Lisa to put his penis in her mouth.

While at Allison's school, Detective Courtney conducted a recorded interview with Allison.  In that interview, which was introduced at the fact-finding trial on consent, Allison stated that Tyler had hit her "more than once" with an extension cord while she was naked and in the presence of Sasha and Lisa.  She specifically recounted that Tyler also hit Lisa with an extension cord because Lisa soiled her pants.

---

[2] "A '[Dodd] removal' refers to the emergency removal of a child from the home without a court order, pursuant to the Dodd Act, which . . . is found at N.J.S.A. 9:6-8.21 to -8.82.  The Act was authored by former Senate President Frank J. 'Pat' Dodd in 1974." N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 609 n.2 (App. Div. 2010).  When the Division removes a child from a home on an emergent basis, the Superior Court, Chancery Division, Family Part, must "hold a hearing on the next court day, whereby the safety of the child shall be of paramount concern . . . ."  N.J.S.A. 9:6-8.31.

A-0033-18T2

Allison again recounted to Detective Courtney the "nasty stuff" Tyler did to Sasha and spelled out "s-e-x" to describe Tyler's actions. Allison stated Tyler sexually abused Sasha and detailed that Tyler would sit on the bed in her room while Sasha was laying on it. Tyler proceeded to unzip his pants and exposed his penis while he ordered Sasha to remove her clothes. Allison then stated that Tyler would repeatedly insert his penis inside of Sasha's "butt." Allison also reported that she witnessed Tyler force Lisa to perform oral sex, recalling that Lisa "suck[ed]" Tyler's "thing" on multiple occasions.

Detective Courtney also interviewed Sasha at the Camden County Prosecutor's Office. According to the caseworker, while in the car on the way to the interview, Sasha told Allison that she did not like Tyler humping her. During her interview with Detective Courtney, Sasha stated that while Lucy was working, Tyler, on a number of occasions, told her to remove her clothes and "hump[ed]" her, and he did "nasty Stuff to her butt" with his penis. Sasha also stated that when she was laying on the bed in her mother's room, Tyler would enter, remove her clothes, and take his penis out. She recalled Tyler's penis having black hair, and that Tyler anally penetrated her which angered her. She also recalled Allison being in the room when Tyler assaulted her. Sasha also stated she witnessed Tyler forcing two-year-old Lisa to touch his penis.

6

Allison, Sasha, and Lisa were evaluated by Cindy DeLago, M.D., M.P.H., of the Cares Institute. Allison stated that she saw child pornography and naked people on Tyler's phone. Specifically, she recalled seeing a three-year-old "baby" touching a two-year old. In addition, she told Dr. DeLago that Tyler forced her to watch pornography when he put a "CD" in the television, and saw people removing their clothes and touching their private parts. Allison did not tell Dr. DeLago about Tyler's sexual abuse of Sasha or Lisa. Allison did inform Dr. DeLago however that Tyler used an extension cord to hit her on her buttocks. Dr. DeLago determined that Tyler sexually abused Allison by exposing her to pornography, and also concluded that Tyler physically abused her when he hit her with the extension cord.

Sasha was also interviewed and disclosed that Tyler also hit her with an extension cord and that he similarly hit Lisa with an extension cord when she defecated on herself. Dr. DeLago concluded that Tyler physically abused Sasha by striking her with an extension cord and was unable to rule out that Sasha was sexually abused by Tyler.

During the one-day fact-finding trial, the Division called Owen and Roman as witnesses and introduced documents into evidence, including the Cares Institute reports for Allison, Camden County Prosecutor's records,

7

videotaped statements of Sasha, Allison, Lucy, and Tyler, an audio statement of Cattanea, and color photographs of Allison's injuries. All of the Division's records were admitted without objection.

Tyler testified on his own behalf and admitted that he twice "popped" Allison, not with an extension cord but a cargo belt, because she had a "plugged in [electronic] device" in the bathroom. He claimed to have "grabbed" the device from the wall while yelling at her that she "knew better." He stated that he called Lucy at work who told him to "whoop her tail." He then "[looked] around for a belt," and "popped" Allison twice while her mom was on FaceTime. He also admitted that he was aware of the safety protection plan which did not permit him to supervise the children.

In its oral decision and conforming order, the court concluded that Tyler had abused and neglected the children under N.J.S.A. 9:6-8.21(c) by physically abusing Allison, and by sexually abusing Sasha and Lisa. The judge found the testimony of Owen and Roman credible. The court described Tyler's testimony as self-serving, confusing, and inconsistent.

With respect to Allison's allegation of physical abuse, the court found that Tyler's admission to "popping" Allison corroborated Allison's and Sasha's statements. The court found it "very troubling" that Tyler repeatedly used the

8

word "popped" to discipline a child. The court further observed that Allison's and Sasha's statements to Division caseworkers and Allison's guidance counselor, among others, were consistent. Allison's bruising as testified to by Roman provided further corroborative proof of the physical abuse allegation.

In concluding that Tyler sexually abused Sasha and Lisa, the court found that Allison's and Sasha's age inappropriate language corroborated their statements. Further, the court found that Allison's and Sasha's "testimony was spontaneous; their testimony was consistent with each other, so in effect the girls corroborated each other. Again, especially with descriptions that they used that most children at that age know nothing about." The court also noted that there were no concerns about the children being "coached" by a parent because, in this case, "the children were being yelled at by their mother to not say anything about [Tyler]."

At the conclusion of Tyler's fact-finding trial the court terminated the Title Nine litigation and this appeal followed. Tyler raises the following arguments for our consideration:

> POINT I
>
> THE TRIAL COURT ERRED AS A MATTER OF FACT AND LAW BECAUSE THERE WAS INSUFFICIENT CREDIBLE EVIDENCE THAT

TYLER HAD SEXUALLY AND PHYSICALLY ABUSED THE CHILDREN.

POINT II

THE EVIDENCE THAT TYLER SEXUALLY ABUSED THE CHILDREN WAS INCREDIBLE, INCONSISTENT, AND UNCORROBORATED.

POINT III

TYLER DID NOT PHYSICALLY ABUSE[] ALLISON, SASHA, OR LISA.[3]

II.

Our review of a trial court's finding of abuse or neglect is guided by well-established principles. "[W]e accord substantial deference and defer to the factual findings of the Family Part if they are sustained by 'adequate, substantial, and credible evidence' in the record." N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 521 (App. Div. 2017) (quoting N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014)). "Indeed, we recognize that '[b]ecause of the family courts' special jurisdiction and expertise in family matters, [we] should accord deference to family court fact finding.'" N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (alteration in original) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). However, "if

---

[3] We have renumbered Tyler's point headings for ease of reference.

the trial court's conclusions are 'clearly mistaken or wide of the mark[,]' an appellate court must intervene to ensure the fairness of the proceeding." N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 227 (2010) (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). We owe no deference to the trial court's legal conclusions, which we review de novo. State v. Smith, 212 N.J. 365, 387 (2012).

"The Division bears the burden of proof at a fact-finding hearing and must prove . . . harm . . . by a preponderance of the evidence." N.J. Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 22 (2013). The Division must sustain that burden through the admission of "competent, material and relevant evidence." N.J.S.A. 9:6-8.46(b); N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 32 (2001).

Here, the Division's evidence concerning Tyler's alleged abuse or neglect consists of the children's statements by Allison and Sasha to the caseworker, representatives of law enforcement, and a health care provider. The court relied upon these statements as the basis for its abuse or neglect finding. Tyler argues, however, that the court ignored "inconsistent evidence, material omissions, and outright fabrications," and that the children's separate statements could not properly corroborate each other, and therefore there was insufficient evidence

supporting the court's abuse or neglect finding. See N.J.S.A. 9:6-8.46(a)(4). We disagree.

"In matters involving the alleged abuse and neglect of children, the New Jersey Rules of Evidence are supplemented by statute and court rule." N.J. Div. of Youth & Family Servs. v. L.A., 357 N.J. Super. 155, 166 (App. Div. 2003). N.J.S.A. 9:6-8.46(a)(4) provides that when the Division alleges abuse and neglect of a child, "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect."

To establish corroboration of a child's statement under N.J.S.A. 9:6-8.46(a)(4), "[s]ome direct or circumstantial evidence beyond the child's statement itself is required." N.B., 452 N.J. Super. at 522. Corroboration can be established by varied means. N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 436 (App. Div. 2002). "The most effective types of corroborative evidence may be eyewitness testimony, a confession, an admission or medical or scientific evidence." L.A., 357 N.J. Super. at 166. "However, corroborative evidence need not relate directly to the accused." Ibid.

The "evidence 'need only provide support for the out-of-court statements.'" N.B., 452 N.J. Super. at 521 (quoting L.A., 357 N.J. Super. at 166).

Corroborative evidence that is sufficient to support a court's reliance on a child's statements for a finding of abuse or neglect may be circumstantial because there is often no direct physical or testimonial evidence to support a child's statements. See Z.P.R., 351 N.J. Super. at 436. For example, in Z.P.R., we determined that a child's age-inappropriate sexual behavior corroborated the child's statements about a parent's improper sexual conduct. Z.P.R., 351 N.J. Super. at 436. In contrast, in N.B., we found insufficient evidence of corroboration, in part because a psychologist's report stating the child suffered from post-traumatic stress disorder as a result of the alleged abuse or neglect constituted inadmissible hearsay under N.J.R.E. 808. N.B., 452 N.J. Super. at 523-26.

## III.

A.    Sexual Abuse Allegations

Tyler's claim that the trial record contains insufficient evidence to support the allegations of sexual abuse against Sasha and Lisa ignores one critical fact

A-0033-18T2

– Allison's unchallenged statements[4] served as direct, eyewitness evidence of Tyler's sexual abuse of Sasha and Lisa. As noted, she repeatedly observed Tyler "put his private part in [Sasha's] butt and "make [Lisa] suck his private part." In addition to direct evidence of Tyler's abuse, Allison's repeated accounts serve to corroborate Sasha's statement that Tyler put his penis "inside of [her] butt." See L.A., 357 N.J. Super. at 166 ("The most effective types of corroborative evidence may be eyewitness testimony, a confession, an admission or medical or scientific evidence.")

Consequently, we are convinced the trial court correctly determined that Allison's and Sasha's separate statements provided sufficient corroboration of each other to support the court's finding of abuse or neglect under N.J.S.A. 9:6-8.21(c). The record supports the court's determination. As noted, Allison said Tyler put his "private part" in Sasha's butt, and Sasha independently reported that Tyler put his penis in her butt. Additionally, both Allison and Sasha stated that they saw Tyler force Lisa to "suck" or "touch" his penis.

We are not persuaded by Tyler's contention there was insufficient corroboration because not every fact related by each child was directly

---

[4] We note that Tyler consented to the introduction of the Division's documents, which includes Allison's and Sasha's statements. Accordingly, we consider any objection to these statements waived. See M.C. III, 201 N.J. at 341-42.

corroborated by the others. "The case law does not require that the evidence be specific before it can be deemed corroborative of [a] child's out-of-court statements." Z.P.R., 351 N.J. Super. at 435. There must only be some evidence beyond the solitary assertion of a child. See N.B., 452 N.J. Super. at 522.

We also reject Tyler's contention the children's statements were insufficient as a matter of law to provide sufficient corroboration under N.J.S.A. 9:6-8.46(a)(4). Tyler offers no reasoned basis that the consistent admissible statements of two children describing acts of abuse or neglect do not provide the corroboration required under N.J.S.A. 9:6-8.46(a)(4). The statute supplemented the New Jersey Rules of Evidence by rendering admissible "previous statements made by [a] child relating to any allegation of abuse or neglect." L.A., 357 N.J. Super. at 166; see also N.J. Div. Of Child Prot. & Perm. v. J.A., 436 N.J. Super. 61, 66-67 (App. Div. 2014) (finding uncorroborated statements of a child are admissible under N.J.S.A. 9:6-8.46(a)(4)). Thus, each child's statement constituted admissible evidence corroborating what the other children said.

We are mindful that we "must protect against conflating a statement's reliability with corroboration," and N.J.S.A. 9:6-8.46(a)(4) requires "independent evidence of corroboration" to support a finding of abuse or neglect. N.B., 452 N.J. Super. at 522. We conclude Allison's and Sasha's

statements are sufficiently reliable to be deemed admissible evidence under N.J.S.A. 9:6-8.46(a)(4). Moreover, under the circumstances presented, each child's statement provides independent, direct, and admissible evidence supporting the allegations of abuse or neglect. See N.B., 452 N.J. Super. at 522 (requiring direct or circumstantial evidence supporting the child's out-of-court statement for corroboration under N.J.S.A. 9:6-8.46(a)(4)); L.A., 357 N.J. Super. at 166 (finding corroboration under N.J.S.A. 9:6-8.46(a)(4) requires only evidence supporting a child's out-of-court statements).

This is not a case where the court relied on the consistent statements of a single child to support a finding of abuse or neglect. Consistency of the statements of a child alone does not constitute corroboration under N.J.S.A. 9:6-8.46(a)(4). N.B., 452 N.J. Super. at 523. As noted, here, the separate admissible statements of each of the children provided the independent corroboration required for a finding of abuse or neglect under N.J.S.A. 9:6-8.46(a)(4). Ibid. (finding insufficient corroboration of a child's statements describing abuse or neglect that were supported only by inadmissible reports and testimony of a psychologist).[5]

---

[5] Tyler does not rely on N.J. Div. of Child Prot. & Permanency v. M.C., 435 N.J. Super. 405, 422-24 (App. Div. 2014), where we discussed, but did not

B.    Excessive Corporal Punishment Allegations

We are also satisfied that Allison's statements, along with Roman's testimony and his observations of Allison's injuries, which were corroborated by the photographs taken the next day, provided sufficient credible evidence supporting the court's finding that Allison was abused or neglected by Tyler's use of excessive corporal punishment. Tyler, however, contends that the court failed to make a specific finding that the corporal punishment he administered was "excessive," and there was no evidentiary basis . . . to infer a finding of excessive corporal punishment." We are not persuaded.

The phrase "excessive corporal punishment" is not defined in N.J.S.A. 9:6-8.21(c)(4)(b). N.J. Dep't of Children & Family Servs., Div. of Youth & Family Servs. v. K.A., 413 N.J. Super. 504, 510 (App. Div. 2010). Excessive corporal punishment cases are fact-sensitive and "idiosyncratic." P.W.R., 205 N.J. at 33. We "ought not assume that what may be 'excessive' corporal punishment for a . . . child must also constitute . . . excessive corporal punishment in another setting." Ibid. "[A] parent may inflict moderate

---

decide, whether children's overlapping statements provide sufficient corroboration under N.J.S.A. 9:6-8.46(a)(4). An argument not briefed on appeal is deemed waived. Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008).

A-0033-18T2

correction such as is reasonable under the circumstances of a case," but punishment is excessive when it goes "beyond what is proper or reasonable." K.A., 413 N.J. Super. at 510-11.

N.J.A.C. 10:129-2.2(a) lists injuries and risks of harm that "may be abuse or neglect[,]" including "[c]uts, bruises, abrasions, welts or oral injuries." N.J.A.C. 10:129-2.2(a)(9). Where the alleged abuse does not correspond exactly with one of the types of injuries or risks of harm listed, the determination of whether a parent's action amounts to abuse or neglect requires consideration of the nature of the child's injury and the circumstances surrounding the incident. K.A., 413 N.J. Super. at 512.

Tyler likens that the circumstances here to those in K.A. and, for that reason, the record is insufficient to support the court's abuse or neglect finding. In K.A., we found an isolated incident with a "psychologically disruptive child, unable or unwilling to follow verbal instructions or adhere to passive means of discipline" did not constitute abuse or neglect where the parent struck the child with a closed fist and caused four small bruises on the child's shoulder. Id. at 506, 512. We concluded that the "[b]ruises, although, visible, never exposed [the child] to any further harm if left untreated[,]" and the parent's action was "not part of a pattern of punishment." Id. at 512; see also P.W.R., 205 N.J. at

18

36 (finding no abuse or neglect where a parent slapped a teenage child on the face as a form of punishment but did not cause any bruises or injury).

We found the isolation of the incident, the reasons underlying the actions, and the frustrating circumstances the defendant faced due to the child's conduct provided "the prism through which we determine whether . . . actions [are] indeed 'excessive.'" Ibid. When a child's injuries do not establish "per se excessive corporal punishment," we must consider such factors to determine whether a defendant's actions "amount[] to excessive corporal punishment." Ibid. (alteration in original).

Here, there is no evidence Allison was disruptive or presented trying circumstances to Tyler. See ibid. Instead, the evidence shows Tyler inflicted corporal punishment by using an extension cord on Allison's near naked body, not for purpose of taking control of an unruly or defiant child as in K.A, but to inflict excessive punishment or repeatedly "pop" her, in his words, for bringing an electronic device into the shower. That response was unreasonable and disproportionate under the circumstances. In this regard, we note that Tyler admitted that he had unplugged the device prior to striking Allison repeatedly and she did not refuse his requests to remove herself from the shower. Under the circumstances, we deem the court's conclusion, as expressed in its order, that

Tyler's punishment was excessive, fully supported by the record at the fact finding proceeding. See N.J. Div. of Youth & Family Servs. v. S.H., 439 N.J. Super. 137, 146-47 (App. Div. 2015) (finding the defendant's use of implements and infliction of corporal punishment was unjustified and excessive in response to the child's misbehavior and use of profanity); K.A., 413 N.J. Super at 510-11 (finding punishment is excessive when it is "beyond" what is reasonable).

Further, the evidence shows that unlike in K.A., Tyler's use of an extension cord as a method of corporal punishment was not an isolated incident. See K.A. 413 N.J. Super. at 513 (finding no abuse or neglect in part because the incident was "aberrational to this family"). According to Allison and Sasha, Tyler beat them both with extension cords, and also hit Lisa when she defecated in her pants. We also we reject Tyler's argument that the fortuitous circumstance that Allison's injuries did not require medical intervention requires reversal of the court's abuse or neglect finding. See, e.g., N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. C.H., 414 N.J. Super. 472, 476 (App. Div. 2010) (affirming an abuse or neglect finding where the injuries did not require any medical attention).

Tyler also differs from the defendant in K.A. in a significant respect. In K.A., the defendant "accepted full responsibility for her actions, was contrite,

and complied with Division-sponsored counseling." K.A., 413 N.J. Super. at 512. After the "isolated incident," the situation improved and the Division was no longer required to be involved. Ibid. Here, however, Tyler never took responsibility for his actions. Instead, he denied that he used an extension cord, and excused his conduct as authorized by Lisa and warranted under the circumstances. The court determined Allison's statements were credible and rejected Tyler's explanation as "self-serving" and without corroboration. In addition, in light of the children's allegations, the court barred him from contact with the children.

Viewing the evidence through the prism of factors we established in K.A., it is clear the court correctly concluded Tyler abused or neglected the children by imposing excessive corporal punishment. See K.A., 413 N.J. Super. at 512. Punishment is excessive if a parent's intentional act exposes a child to "the substantial probability that injury would result from [the caregiver's] conduct." M.C. III, 201 N.J. at 345.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0033-18T2