# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2197-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

    Plaintiff-Respondent,

v.

T.B.,

    Defendant,

and

R.G.,

    Defendant-Appellant.

_____

IN THE MATTER OF L.G.,

    a Minor.

_____

Submitted January 13, 2020 – Decided February 4, 2020

Before Judges Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FN-02-0247-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Andrew Robert Burroughs, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Donna Sue Arons, Assistant Attorney General, of counsel; Jaime Elaine Stofa, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Margo E.K. Hirsch, Designated Counsel, on the brief).

PER CURIAM

Defendant R.G. appeals the trial court's November 2, 2017 decision finding that he abused or neglected his son, L.G., within the meaning of N.J.S.A. 9:6-8.21(c)(4). The trial court based its finding on evidence at trial that defendant chronically abused heroin while acting as the primary physical custodian for L.G. After reviewing the record in light of the governing legal principles, we affirm.

I.

We discern the following facts from the record. On November 13, 2016, R.G. was arrested for possession of heroin and was consequently placed on

probation. On April 6, 2017, the Division of Child Protection and Permanency (Division) received a referral from Nichole Dallas, R.G.'s probation officer, stating that R.G. "had been arrested for possession of heroin on April 3[] and it was unknown if [L.G.] was with him or not with him or where the child currently was." At the time of this arrest, R.G. was the custodial parent of L.G., who was just shy of his fourth birthday.[1]

After receiving the referral, Yocasta Riccardi, a Division caseworker, interviewed L.G., L.G.'s maternal grandmother, and T.B., L.G.'s biological mother, at the grandmother's home. The grandmother advised Riccardi that R.G. had asked her to "take care of L.G. [for several days]" so he could attend a wedding. The grandmother explained that L.G. would typically stay with her on weekends. Riccardi interviewed L.G., and in the course of the interview, L.G. stated that R.G. "uses a smoker." L.G. clarified that a smoker "was an object that was red or orange at the top and had water and that [R.G.] crushes rocks and smokes from it." L.G. also stated that when R.G. would use the smoker, "sometimes he's in the room and sometimes [R.G.] asks him to leave the room."

---

[1] The Division had previously removed L.G. from his mother T.B.'s custody after he ingested a drug, while in her care, and became unresponsive. The Division granted physical custody of L.G. to R.G. on October 21, 2014.

A-2197-18T4

On April 10, 2017, R.G. contacted the Division, and Riccardi interviewed R.G. R.G. explained that his April 3 arrest for heroin occurred after he was pulled over. R.G. confirmed that after the arrest, he asked L.G.'s grandmother to pick up L.G. from daycare, and he was given "the option to either go to jail or go into detox." He chose the latter. When confronted with L.G.'s comments regarding R.G.'s use of a "smoker," R.G. denied having one and "had no idea how his son would know what a smoker was." R.G. denied having used drugs in front of L.G.

Riccardi interviewed R.G. again on April 12, 2017 in his home, where she found no sign of the smoker. R.G. explained that before his November 2016 arrest, he used heroin on weekends while L.G. was with his grandmother but claimed that he had not used heroin since his April 2017 arrest. R.G. clarified that he had used heroin at 5:00 p.m. on April 3 and "was scheduled to pick up L.G." two hours later. R.G. conceded to Riccardi that he understood this was a poor idea. Thereafter, the Division determined that R.G. had neglected L.G. by creating a risk of harm, finding that R.G.'s substance abuse threatened harm to L.G.

On April 18, 2017, the court granted the Division's application on an order to show cause for care and supervision of L.G., finding that the Division had

4

established a prima facie showing of abuse and neglect of L.G. by R.G. under N.J.S.A. 9:6-8.21 to -8.73.  On August 28, 2017, the judge held a plenary hearing to determine whether R.G. abused or neglected L.G.  Sandra Attal, an investigations unit supervisor at the Division, who supervised the investigation of R.G. and was familiar with the facts of his case, testified on behalf of the Division.  Attal testified that, based on L.G.'s comments to Riccardi and his parents' history of drug use, the Division was concerned that L.G. was able to "describe something that appeared to sound like a drug, that there would be no other way for him to really have that understanding of what a smoker is or . . . the process of . . . [R.G.] breaking rocks and putting [them] into the smoker."

Attal added that background checks revealed that R.G. had been charged with drug offenses in January 2014 and November 2015.  Attal testified that R.G.'s arrests concerned the Division because "[R.G.] was not forthcoming in regard[] to his substance abuse charges and use.  He indicated that he had been clean . . . for years and relapsed in November . . . 2016, not disclosing the information about 2015, when he was the primary caretaker to L.G."  Attal also emphasized R.G.'s admitted intent to "pick up L.G. and take care of him" after using heroin, and while the Division "did not observe [R.G.] under the influence . . . [it] believed that [this] was a common occurrence."

On November 2, 2017, the judge placed her oral decision on the record. The judge determined that the evidence the Division introduced at trial was trustworthy and admissible under N.J.R.E. 803(c)(6), while at the same time finding Attal's testimony credible and based on personal knowledge. The judge concluded that "[R.G.'s] substance abuse was not isolated to the referral incident, [as] the evidence demonstrates a pattern of use throughout his involvement with the Division."

The judge "reject[ed] [R.G.'s] claim that he did not use heroin between November 2016 and the April 2017 arrest," stating that "[i]t is completely implausible that the only two times he purchased and used heroin was when he was arrested. It is common knowledge that . . . heroin is a highly addict[ive] . . . opioid, and I refer to the centers for disease control and prevention." The judge further remarked that based on R.G.'s comments that he had entered a detoxification program and an intensive outpatient treatment program [IOP] after his most recent arrest, "[R.G.] was not an occasional or recreational user," as "his uses [were] chronic."

The trial judge also determined that R.G. had abused substances while acting as L.G.'s primary caregiver. The judge rejected R.G.'s position that he only abused heroin "on weekends when L.G. was in the care of his maternal

grandmother," emphasizing that his April 3, 2017 arrest, the same day on which "he purchased and used heroin," occurred on a Monday. The judge stressed that R.G. had intended to pick up L.G. after using heroin two hours prior, and "[a]ccording to the National Institute on Drug Abuse," as well as common sense, R.G. would have still been under the influence of heroin at the time he intended to pick up L.G. from daycare and act as his caregiver. The judge explained that R.G. exhibited impaired judgment in "[b]elieving it would be an acceptable parenting decision to transport and parent his child after recently using heroin. Even [R.G.] later conceded that such a plan was a bad idea."

The trial judge also found "L.G.'s own personal history [to be] a significant factor," noting that both of L.G.'s parents had lost custody of him due to drug abuse. The judge remarked that given L.G.'s prior exposure to drugs in 2014, "[R.G.] should be acutely aware of the risks inherently posed by abusing substances in a home with a young child." The judge determined that "[n]otwithstanding [R.G.'s] experience[,] he acted without regard to the serious consequences of abusing substances while caring for his child. His conduct can only be described as grossly negligent."

Further, the judge highlighted L.G.'s statement regarding the smoker, finding that based on their spontaneous and vivid nature, as well as the details

provided as to the manner in which R.G. would use the device, "[t]his is not knowledge a three-year[-]old child would reasonably possess." The judge concluded that L.G.'s statement was reliable and admissible under N.J.S.A. 9:6-8.46(a)(4) and that it evinced "undeniably . . . age inappropriate knowledge."

The judge found that L.G.'s statement was sufficiently corroborated by R.G.'s arrest, his admission to having relapsed, and his participation in detoxification and IOP programs. The judge also construed L.G.'s description as implicating drug use, because "no known substance other than [il]licit ones . . . come[] in rock form and [are] ingested the way L.G. described," and according to the Drug Enforcement Administration and the Partnership For a Drug-Free New Jersey, the smoker is a common means of abusing "[R.G.'s] . . . drug of choice, heroin." The judge therefore found that R.G.

> not only used drugs within the home but in clear sight of his young child who with the slightest misstep could have suffered perilous consequences. He could easily have gained access to his father's heroin and ingested it. His father could have nodded out, or worse, overdosed. At the tender age of [three], almost [four], L.G. cannot be expected to adequately care for himself during his parent's impaired state after using heroin. L.G. could not call for help or otherwise protect himself. He, like any young child, requires parental supervision and guidance.

The judge concluded that "[b]ased upon the totality of the circumstances, given the unique facts presented in this case, the court finds that the Division has met its burden by a preponderance of the evidence, that [R.G.] placed L.G. in a risk of substantial imminent harm." This appeal followed.

On appeal, R.G. raises the following arguments:

> [POINT I:] AS THE TRIAL COURT ERRONEOUSLY RELIED UPON UNRELIABLE DOUBLE/EMBEDDED HEARSAY EVIDENCE TO SUPPORT ITS FINDING OF ABUSE AND NEGLECT, THE TRIAL COURT'S ORDER MUST BE VACATED.
>
> [POINT II:] AS L.G.'S HEARSAY STATEMENT WAS NOT CORROBORATED BY COMPETENT, MATERIAL AND RELEVANT EVIDENCE AS REQUIRED UNDER N.J.S.A. 9:6-9.46(a)(4), THE ORDER FINDING ABUSE AND NEGLECT MUST BE VACATED.
>
> [POINT III:] AS THE TRIAL COURT ENGAGED IN IMPERMISSIBLE JUDICIAL GAP-FILLING TO FIND IMMINENT DANGER, THE ORDER FINDING ABUSE AND NEGLECT MUST BE VACATED.
>
> [POINT IV:] THE TRIAL COURT'S CUMULATIVE ERRORS REQUIRE VACATION OF THE ORDER FINDING ABUSE AND NEGLECT.

We are unpersuaded by R.G.'s arguments and affirm, substantially for the reasons expressed in the family judge's oral decision. We add the following comments.

9

We accord deference to family court findings, "recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin–Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). Findings by a family judge "are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 283 (quoting Cesare, 154 N.J. at 411-12). "Indeed, we defer to family part judges 'unless they are so wide of the mark that our intervention is required to avert an injustice.'" N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 365 (2017) (quoting N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 427 (2012)). We defer to a family judge's findings and credibility determinations because he or she can observe witnesses and "has a better perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (citing Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)). The court's "legal conclusions are reviewed de novo: when they are unsupported by competent evidence in the record, they will be reversed." N.J. Div. of Child Prot. & Permanency v. R.W., 438 N.J. Super. 462, 470 (App. Div. 2014) (citing Cesare, 154 N.J. at 412).

An "abused or neglected child" includes

a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court.

[N.J.S.A. 9:6-8.21(c)(4).]

"Whether a parent or guardian has failed to exercise a minimum degree of care is to be analyzed in light of the dangers and risks associated with the situation." G.S. v. N.J. Div. of Youth & Family Servs., 157 N.J. 161, 181-82 (1999). Failure to exercise a "minimum degree of care" requires "conduct that is grossly or wantonly negligent[] but not necessarily intentional." N.J. Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 299-300 (2011) (quoting G.S., 157 N.J. at 178). "[T]he concept of willful and wanton misconduct implies that a person has acted with reckless disregard for the safety of others." G.S., 157 N.J. at 179 (citing Fielder v. Stonack, 141 N.J. 101, 123-24 (1995)).

New Jersey courts do not delineate all of the scenarios that would amount to a finding of failure to exercise a "minimum degree of care," but "the inquiry should focus on the harm to the child and whether that harm could have been prevented had the guardian performed some act to remedy the situation or

11

remove the danger." Id. at 182. "[A] guardian fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181. In deciding whether a child has been abused or neglected, courts "must base [their] findings on the totality of the circumstances." N.J. Div. of Youth & Family Servs v. V.T., 423 N.J. Super. 320, 329 (App. Div. 2011).

R.G. argues that there was insufficient evidence to allow the judge to find that he abused or neglected L.G. We disagree. We conclude that even assuming that L.G.'s statement concerning R.G.'s use of a smoker was inadmissible as imbedded hearsay (which we reject below), R.G.'s own admissions support the judge's factual findings. In that regard, there was ample evidence in the record supporting the judge's conclusion that R.G.'s description of his limited abuse of heroin was not credible.

As the judge found, the evidence showed a pattern of continuous drug use by R.G. throughout his involvement with the Division. Based on the addictive nature of heroin, the judge did not accept R.G.'s position that he abstained from using the drug between his arrests. Further, the judge based her finding of chronic use on R.G.'s own statements that he had relapsed and participated in

12

rehabilitative programs. The judge also found incredible R.G.'s position that he used only on weekends when L.G. was not home. This position was belied by the fact that R.G.'s April 2017 arrest occurred on a Monday, shortly before he was to pick up his son.

Additionally, R.G.'s admitted intent to pick up his son while under the influence would alone support a finding of abuse or neglect. That R.G.'s arrest precluded him from actually picking up L.G. does not eliminate the risk that his conduct posed to his son. As the judge also considered, in light of L.G.'s prior exposure to drug abuse in the home, R.G.'s poor judgment was all the more troubling. Thus, R.G.'s admissions alone constituted ample credible evidence supporting the judge's determination that R.G. abused or neglected L.G., and we affirm her finding. See Thieme, 227 N.J. at 283; Pascale, 113 N.J. at 33.

Although we find the foregoing admissions and evidence to be more than sufficient to support the decision below, we briefly address and reject R.G.'s other contentions. R.G. first contends that Attal's testimony regarding L.G.'s statements made to Riccardi concerning his use of a smoker constituted inadmissible double hearsay. We disagree.

We review a trial court's evidentiary ruling for abuse of discretion. Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 374 (2010). An abuse

of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso‑Sanchez v. Immigration and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

"A 'hearsay statement[] embedded in Division records' from persons other than Division personnel and affiliated professional consultants 'may not be admitted unless it satisfies an exception to the hearsay rule.'" N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 497 (App. Div. 2016) (alteration in original) (quoting N.J. Div. of Child Prot. & Permanency v. B.O., 438 N.J. Super. 373, 385 (App. Div. 2014)); see N.J.R.E. 805.

Here, we are satisfied that any statements contained in the Division's reports from both its personnel and R.G. were admissible. See Estate of Hanges, 202 N.J. at 374; Flagg, 171 N.J. at 571. The reports themselves were admissible as business records, see N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 32 (2011), and Attal had sufficient personal knowledge to testify as to the reports' contents. Additionally, any of Riccardi's observations or statements contained in the reports were admissible as statements by Division personnel, see ibid., and any statements that R.G. made to Riccardi were likewise

admissible as admissions of a party opponent, <u>see</u> N.J.R.E. 803(b)(1); N.J.R.E. 805.

R.G. also argues that because L.G.'s statement detailing R.G.'s use of a smoker was uncorroborated, the judge should not have considered it. Again, we disagree. "[A] child's hearsay statement may be admitted into evidence[] but may not be the sole basis for a finding of abuse or neglect." <u>N.J. Div. of Child Prot. & Permanency v. J.A.</u>, 436 N.J. Super. 61, 67 (App. Div. 2014) (quoting <u>P.W.R.</u>, 205 N.J. at 33); <u>see also</u> N.J.S.A. 9:6-8.46(a)(4). "In general, corroborative evidence need not be so direct so long as it provides some support for the out-of-court statements." <u>J.A.</u>, 436 N.J. Super. at 67 (citing <u>N.J. Div. of Youth & Family Servs. v. Z.P.R.</u>, 351 N.J. Super. 427, 436 (App. Div. 2002)); <u>N.J. Div. of Youth & Family Servs. v. L.A.</u>, 357 N.J. Super. 155, 166 (App. Div. 2003). We have previously held that, with allegations of sexual abuse, "evidence of age-inappropriate sexual behavior [by a child] could provide the necessary corroboration required by N.J.S.A. 9:6-8.46(a)(4)." <u>N.J. Div. of Child Prot. & Permanency v. A.D.</u>, 455 N.J. Super. 144, 162 (App. Div. 2018) (quoting <u>Z.P.R.</u>, 351 N.J. Super. at 436).

We review de novo whether L.G.'s statement to Riccardi was corroborated. <u>See</u> <u>N.J. Div. of Child Prot. & Permanency v. N.B.</u>, 452 N.J.

Super. 513, 521 (App. Div. 2017); <u>R.W.</u>, 438 N.J. Super. at 470. In that regard, we find there to be sufficient evidence corroborating his statement. <u>See</u> N.J.S.A. 9:6-8.46(a)(4); <u>J.A.</u>, 436 N.J. Super. at 67. At the outset, L.G.'s comments are self-corroborated. We are satisfied that intricate knowledge of a "smoker" by a three-year-old child is not age appropriate. <u>Cf.</u> <u>A.D.</u>, 455 N.J. Super. at 162. Even if L.G.'s statement was not self-corroborating, we are satisfied that R.G.'s own admissions provided ample corroboration and support for the statement. <u>See</u> <u>J.A.</u>, 436 N.J. Super. at 67; <u>L.A.</u>, 357 N.J. Super. at 166.

To the extent we have not specifically addressed this or any of R.G.'s remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2197-18T4