# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1067-23

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

 Plaintiff-Respondent,

v.

H.C.,[1]

 Defendant,

and

T.O.,

 Defendant-Appellant.

_____

IN THE MATTER E.O.,
a minor.

_____

 Submitted February 4, 2025 – Decided April 11, 2025

 Before Judges Sumners and Susswein.

---

[1] We use initials and pseudonyms to protect the confidentiality of these proceedings. R. 1:38-3(d)(12).

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FN-20-0062-22.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Arthur D. Malkin, Designated Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Alicia Y. Bergman, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minor E.O. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Jennifer M. Sullivan, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant T.O. appeals a Family Part order that he violated N.J.S.A. 9:6-8.21(c)(3) by sexually abusing his then-thirteen-year-old daughter ("victim" or "daughter") once in January 2020. Having considered the parties' arguments, the record, and the applicable legal principles, we affirm.

I.

Following a three-day fact-finding hearing, the Family Part judge entered an order and oral decision finding that defendant sexually abused his daughter. The victim, who was fifteen years old when the hearing was held, did not testify. Defendant neither testified nor presented any witnesses. Testimony was limited

A-1067-23

to three Division of Child Protection and Permanency (Division) witnesses — a Division caseworker, the Union County Prosecutor's Office (UCPO) investigating detective, and the Division's psychological expert — whose testimonies focused primarily on the victim's out-of-court statements concerning the alleged abuse. We briefly summarize each witnesses' testimony.

Veronica Silva

Division caseworker Silva initiated an investigation by visiting the victim's family home after a counselor at the victim's school reported the victim's allegations that her father had sexually abused her. Silva interviewed the victim, who seemed "a little bit uncomfortable" and "a little nervous . . . because she didn't want her father to get in trouble." Considering the victim's reticence and the interview took place at her home while her mother was there, Silva gave her a notebook to write her responses to Silva's questions rather than answering verbally.

After the victim wrote in the notebook that the abuse happened two years ago, she then tearfully described to Silva the sexual acts her father performed on her. The victim said she told her mother who immediately confronted her father. Her father denied the accusation and left the house for a few days and when he returned, they avoided each other. The victim further told Silva that

her maternal uncle and paternal aunt learned of her allegations during a family meeting, after which she lived with her aunt from July to December 2020.

Silva next interviewed H.C., the victim's mother.[2]  Her mother confirmed that her daughter told her about the alleged abuse, but claimed it was a lie to "just . . . manipulate" the Division.  The mother said her daughter falsely accused her father because she wanted to live with her friend.

UCPO Detective Jennifer Smith

The same day the victim's allegations were reported to the Division, UCPO Detective Jennifer Smith conducted a videotaped interview of the victim at the Child Advocacy Center, which was played in court.  Defendant did not object to the video being admitted into evidence.  During the interview, the victim graphically described her fathers' sexual abuse, which happened in the early morning of January 4, 2020.  We need not detail the abuse to resolve this appeal.

The victim said that, after she told her mother the next day about the incident, her mother confronted her father.  Her mother asked her if he went "all the way," and was "relieved" when she said "no."  Her mother advised her "to

---

[2]  The trial judge "made no findings as to [H.C], because no claims of abuse or neglect have been made against [her]."

give out an olive branch" to her father. The victim said her father came to her bedroom and, after realizing her door was locked, he "lightly apologized," saying he "thought it was a dream."

The victim was able to verify the date of the abuse because she wrote down what happened the next day in a note on her cellphone. She did not have the original document but had "copied and pasted" its contents into a "Google Document." As she searched through her phone, Det. Smith left the room. When the detective returned, the victim said she was going to edit the note because something was "not true." However, after Det. Smith asked her not to change anything, she "hit the undo button." Det. Smith then read aloud the note, which explicitly detailed the abuse. Det. Smith testified there was no way for her to confirm the date the victim's note was made or if there were other prior versions of the note.

Det. Smith also conducted a video interview of the victim's mother, which was played in court. Defendant objected to the admissibility of the interview as hearsay, but the judge overruled the objection, reasoning she was "a party" to the case and "[i]t's not offered for the truth [of] the matter asserted." The mother called her daughter a liar and a "very manipulative, sneaky child", claiming the accusations were made up because, "at the time," her daughter did not like that

5

she and defendant were having some marital discord. Prior to making the accusations, her daughter told her to leave defendant, saying "he doesn't treat you right," and "why don't you kick him out?" However, she felt her daughter "was just touched" without any sexual penetration.

Amy Kavanaugh, Ph.D.

Dr Kavanaugh, an expert in psychology with twenty-seven years' experience assessing children for sexual abuse and neglect, testified regarding her evaluation of the victim, her interview of the victim's aunt, and her review of the Division's and law enforcement's records. The victim told Dr. Kavanaugh that her father sexually abused her but declined to discuss it because it "was very difficult and uncomfortable for her." The victim shared that the abuse caused: her: pre-existing bulimia to "peak" after she locked herself in her bathroom; to isolate herself, even sleeping in her closet and "lock[ing] herself in the bathroom for two days"; and to have "vivid dreams" and "nightmares" about the abuse; to be "scared to be alone with men."

Dr. Kavanaugh diagnosed the victim with post-traumatic stress disorder (PTSD), "likely" due to "the alleged sexual abuse by her father, the difficult family environment with yelling[,] [] a lot of parental conflict, and some domestic violence." The doctor was aware of the victim's "behavioral issues"

6

prior to the alleged abuse but did not review the victim's previous therapeutic or psychiatric records. Dr. Kavanaugh did not opine that the sexual abuse occurred but said it was "suspected" based on "[the victim's] allegations of what happened with her father," "all of her statements to everybody," and "all the records" reviewed. Dr. Kavanaugh emphasized that she never "confirm[s] for sexual abuse," hence the diagnosis of "child sexual abuse suspected."

## II.

In finding that defendant sexually abused his daughter, the Family judge recognized that, without her testimony, he had to find evidential support through "some independent corroboration."

The judge found credible Dr. Kavanaugh's opinion of suspected child abuse based on her PTSD diagnosis of the victim that stemmed from interviewing the victim and reviewing the Division's and law enforcement's records. Specifically, the judge determined:

> It is possible that the diagnostic impression[s] of Dr. Kavanaugh are not the result of an improper sexual abuse, but possible is not . . . the standard for judging a case.
>
> . . . .
>
> [T]he and [PTSD] difficulties the [victim] was having could be from [her] preexisting exhibited problems which include psychiatric care with medication, a

suicide attempt, eating disorders, relationship problems between the parents, and domestic violence occurring in the home.

While all of that could be true, I find that the opinion of Dr. Kavanaugh linking . . . her impressions of post-traumatic stress disorder with the sexual abuse provide sufficient corroboration for the [c]ourt to consider the out-of-court statements the [victim] made about the alleged sexual abuse. Therefore, the evidence test of the out-of-court child statements is met in the [c]ourt's opinion.

The judge determined the Division's allegations against defendant were substantiated by the victim's statements to Silva and Det. Smith, and the note she wrote on her cell phone. The judge found the victim's statements and demeanor with Det. Smith had "the absolute ring of credibility, especially [her] ongoing statements . . . [that] she did not want to get her father in trouble," and because she "cr[ied] and asked that the police not be called." The judge observed that, during Det. Smith's interview, the victim "had a very detailed memory of . . . the incident." As to the cellphone note, the judge found it had "every appearance of being a contemporaneous document made by the [victim]," and rejected defendant's argument that it was a "cooked up, late invented" document.

The judge acknowledged he "admit[ted] into evidence the contentions of [the victim's] mother," but reiterated her statements were not being "offered for the truth of the matter asserted." The mother did not testify.

8

Ultimately, the judge found the victim's "statements have the indicia of trustworthiness that far outweigh the arguments made by the defense," and that the Division established "by the preponderance of the evidence that the improper abuse occurred."

## III.

Defendant contends on appeal that the judge erred in relying on the Division's witnesses' testimony concerning the victim's out-of-court statements and the diagnosis that the victim suffers from PTSD to support the finding of sexual abuse. We, however, agree with the Division and Law Guardian that the order was based on admissible credible evidence in the record.

## A.

Title Nine provides that a child is abused if a "parent or guardian . . . commits or allows to be committed an act of sexual abuse against the child." N.J.S.A. 9:6-8.21(c)(3). "In a fact-finding hearing (1) any determination that the child is an abused or neglected child must be based on a preponderance of the evidence and (2) only competent, material and relevant evidence may be admitted." N.J.S.A. 9:6-8.46(b).

It is well settled that our review of a trial judge's fact-finding function is limited. "The general rule is that findings by the trial judge are binding on

A-1067-23

appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Deference to a family judge is particularly appropriate due to "the family courts' special jurisdiction and expertise in family matters." Id. at 413. Thus, "we 'should not disturb the factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice' or . . . determine the court has palpably abused its discretion." Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (first alteration in original) (quoting Cesare, 154 N.J. at 412).

For a judge to determine a child was abused under Title Nine, "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect." N.J.S.A. 9:6-8.46(a)(4). Although a "child's hearsay statement may be admitted into evidence, [it] may not be the sole basis for a finding of abuse or neglect." N. J. Div. of Youth and Fam. Servs. v. P.W.R., 205 N.J. 17, 33 (2011). This limitation applies only to the court's reliance on the out-of-court statements for

the finding of abuse or neglect, not to the statements' admissibility. <u>N. J. Div. of Child Prot. & Permanency v. J.A.</u>, 436 N.J. Super. 61, 66-67 (App. Div. 2014).

The corroborative evidence "need only provide support for the out-of-court statements," it does not have to "relate directly to the alleged abuser." <u>N. J. Div. of Youth Fam. Servs v. Z.P.R.</u>, 351 N.J. Super. 427, 435-36 (App. Div. 2002) ("It would be a rare case where evidence could be produced that would directly corroborate the specific allegation of abuse between the child and the perpetrator"). Indirect or circumstantial evidence, such as psychological evidence, may suffice as corroboration. <u>Id.</u> at 436; <u>see also</u> <u>N.J. Div. of Child Prot. & Permanency v. I.B.</u>, 441 N.J. Super 585, 597-98 (App. Div. 2015) (holding a psychologist's testimony linking a child's adjustment disorder to alleged sexual abuse admissible to corroborate the child's out-of-court statements). The "most effective type[] of corroborative evidence may be . . . medical or scientific evidence." <u>N.J. Div. of Youth & Fam. Servs. v. L.A.</u>, 357 N.J. Super. 155, 166 (App. Div. 2003).

B.

Guided by these principles, we discern no basis to upset the judge's order. The judge did not abuse his discretion in admitting the victim's out-of-court

statements detailing defendant's abuse. See N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 492 (App. Div. 2016) (internal quotation and citation omitted) (We afford "[c]onsiderable latitude . . . [to a] trial court in determining whether to admit evidence, and that determination will be reversed only if it constitutes an abuse of discretion."). His reliance on the victim's out of court statements were supported by his sound assessment that they were reliable and trustworthy accounts of the abuse inflicted upon the victim by defendant.

We reject defendant's contention, based upon N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 523 (App. Div. 2017), that Dr. Kavanaugh impermissibly "opine[d] about the trustworthiness of [the victim's] hearsay statements." Reliance on N.B. is misplaced. There, we held the trial court impermissibly relied on the hearsay report of a psychologist who did not testify to corroborate the youth's hearsay statements. N.B., 452 N.J. Super at 516. The "court relied upon [the expert's] conclusion that [the minor] suffered from PTSD as a result of exposure to domestic violence," but such reliance was "at odds with our rules of evidence and the case law governing the admission of complex opinions of non-testifying experts." Id. at 524 (emphasis added).

In our case, Dr. Kavanaugh testified, thereby giving defendant the opportunity to question her credibility through cross-examination. Moreover, because she did not confirm that sexual abuse occurred, she did not "opine about the trustworthiness of [the victim's]" out-of-court statements. Id. at 523. That was properly left for the judge as fact finder.

The judge correctly determined Dr. Kavanaugh's connection of the victim's diagnosis with the alleged abuse "provide[d] support for the out-of-court statements" made by the victim and were thus sufficiently corroborative. Z.P.R., 351 N.J. Super. at 436. Defendant erroneously emphasizes that Dr. Kavanaugh could not say the PTSD diagnosis "was only a result of the alleged sexual abuse." (Emphasis added). The multi-causal nature of the victim's PTSD, however, does not diminish Dr. Kavanaugh's opinion that the sexual abuse was a contributing factor. Indeed, the judge's embrace of Dr. Kavanaugh's testimony was appropriate in finding that defendant abused his thirteen-year-old daughter.

We also reject defendant's claim that his due process rights were denied because he did not have the opportunity to cross-examine his daughter, and the trial judge should have conducted an in camera interview. See Rule 5:12-4(b). As the Division and the Law Guardian correctly point out, defendant neither

13

objected to the introduction of the victim's interview with Det. Smith nor requested that she be interviewed by the judge. We further agree with them that in this proceeding, the victim's testimony was not required "unless the child's testimony [was] necessary for the determination of the matter." Rule 5:12-4(b). Because as noted above, the judge had sufficient evidence to reach his finding of abuse, it was unnecessary to interview the victim.

To the extent we have not addressed any of defendants' arguments, it is because we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

14                                              A-1067-23